THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VLADMIR MARSAN, Defendant-Appellant.

First District (3rd Division)   No. 1—89—1168

Opinion filed November 12, 1992.

Gordon H. Berry, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, David Stabrawa, Theodore F. Burtzos, and Stephen E. Ferrucci, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Following a jury trial, defendant Vladmir Marsan was convicted of possession with intent to deliver 900 grams or more of a controlled substance (cocaine). (Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1(3).) He was sentenced to 20 years in prison. On appeal, defendant contends that: (1) the sentence imposed was excessive; and (2) the recent amendment to the Controlled Substances Act (Act) (Ill. Rev. Stat. 1987, ch. 56½, par. 1100 *et seq.*) increasing the penalty for possession of 900 or more grams of cocaine to a range of 15 to 60 years is unconstitutional.

Steven Mitchell testified that about 9 a.m. on October 23, 1988, he was working at the Amoco service station located at 7600 West North Avenue in Elmwood Park. Since he had opened the service station at 5 a.m., only two patrons had made cash sales and he saw no other individuals on the property before defendant arrived. Defendant entered the station carrying a brown paper shopping bag which he set down by the entrance after he entered. The bag looked a bit tattered, as if it had been rolled up and down several times. After defendant purchased cigarettes, he remained, clutching something in his abdominal area. He "seemed to have something that he was having a hard time keeping in place." Defendant told Mitchell he had a gun and they conversed for a while. Defendant then picked up the bag and left. Mitchell testified that when defendant told him he had a gun, he did not feel threatened at all.

After defendant stepped outside, Mitchell called the police and watched defendant walk to the soft drink machines that were located on the southwest corner of the Amoco lot. The machines were about a foot in front of a wall and were separated by only a few inches. As Mitchell described defendant to the police, defendant stood in front of

the machines and squatted down. When defendant stood up, he was no longer holding the brown bag. Mitchell got off the phone just before defendant reentered the station.

Defendant asked Mitchell for change and then proceeded to use the pay telephone located outside on the east side of the gas station. The police called Mitchell back for a description of defendant. Shortly thereafter, the police apprehended defendant.

Police officer Brune DePasquale testified that defendant had just hung up the phone when he pulled up to the scene. DePasquale searched defendant while back-up units arrived. No gun or cocaine was found on defendant. DePasquale testified that he recovered a .38-caliber gun loaded with four rounds from behind the soft drink machines while Sergeant Ronald Pucillio retrieved a brown paper bag from in between the machines in open view. Upon opening the bag, Pucillio found three brown taped packages with white dust on them.

Deborah Davis, a forensic chemist, testified that the packages weighed 937.2 grams, 928.9 grams, and 958.3 grams, respectively. Additionally, the contents contained 62% cocaine. Officer John Minton testified that a kilogram of cocaine with a purity of 62% would have an estimated street value of $200,000.

At the sentencing hearing, in aggravation the State focused on the large quantity of cocaine (totaling close to three kilograms) and the street value per kilogram of 62% pure cocaine (approximately $200,000 per kilogram). Additionally, the State argued that defendant's conduct generally was a threat to society, especially since defendant carried a gun. The presentence investigation report indicated defendant had no prior criminal record.

In mitigation, the defense called defendant's father, Silvia Marson, and his cousin, Cecilia Hernandez. Marson testified that since he brought his family here from Cuba, his son had been gainfully employed, having obtained an EKG technician certificate (in cardiology) from Triton College. Prior to this arrest, his son had never been in trouble. In the summer of 1988, his son was laid off from a job at the University of Florida so he returned to Chicago to seek employment. Additionally, Cecilia testified that from 1980-83 prior to his going to Florida, defendant lived in her neighborhood and they were very close. During that time, he worked and studied. His father kept an envelope of his employment records. During the time Cecilia had known defendant, she never knew him to be in trouble. The defense also argued defendant's conduct was not threatening but rather friendly in nature. Defendant told the trial court only that he was innocent of all charges.

In sentencing defendant, the trial court stated that it considered the facts of the case, the factors in aggravation and mitigation, as well as his lack of prior criminal history and his effort to become a useful citizen. Defendant contends that the 20-year sentence imposed was excessive because this was his first criminal offense, he had a good work history and study record and his conduct indicated that he was not a highly culpable offender.

This court granted rehearing on the resentencing issue only and directed the parties to submit briefs. Upon reconsideration of the issue and arguments presented, we adhere to the previous conclusion which follows.

■■ Possession of 900 or more grams of cocaine with intent to deliver is a Class X felony. The sentencing range for a Class X felony shall be not less than 15 years and not more than 60 years. (Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1(3).) It is well settled that sentencing decisions of the trial court are entitled to great weight and deference, and if the sentence imposed is within the statutory guidelines, reviewing courts may not reduce sentences absent a finding that the trial court abused its discretion. Although we have the discretionary power to reduce an excessive sentence pursuant to Supreme Court Rule 615 (134 Ill. 2d R. 615(b)(4)), the supreme court has frequently stated that the trial court is normally in a better position to consider and determine the appropriate punishment rather than the court of review. The well-reasoned judgment of the trial court includes defendant's credibility, demeanor, general moral character, mentality, social environment, habits and age. *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.

■■ A defendant's lack of prior criminal record is not necessarily the most persuasive consideration at sentencing (*People v. Streit* (1991), 142 Ill. 2d 13, 566 N.E.2d 1351), and in fact, the seriousness of the crime has been called the most important factor to be considered in imposing the sentence. (*People v. Hernandez* (1990), 204 Ill. App. 3d 732, 740, 562 N.E.2d 219.) It is undisputed that defendant's 20-year sentence was at the low end of the statutory range of sentencing for this offense. Given the seriousness of this offense, the nature and circumstances of this case and defendant's criminal history, we cannot say that the trial court abused its discretion in sentencing defendant.

Next, defendant contends the recent amendment to the Act is unconstitutional as an "irrational and unequal overall sentencing scheme" when compared with sentences for other serious offenses in Illinois, such as Class 1 offenses, Class X offenses and murder.

■ When there is a due process challenge to a statute, the statute must be reasonably designed to remedy the evil that the legislature has determined to be a threat to the public. (*People v. Bradley* (1980), 79 Ill. 2d 410, 417, 403 N.E.2d 1029, 1032.) The Illinois Supreme Court has upheld the constitutionality of a graduated penalty scheme providing for punishment based upon the amount of substance containing cannabis, rather than on the amount of pure cannabis. (*People v. Mayberry* (1976), 63 Ill. 2d 1, 345 N.E.2d 97.) The court held that the statute was reasonable because the legislature "may have believed that any given amount of drug can be distributed to a greater number of people and thus have a greater potential to be harmful if it is mixed with another substance." (*Mayberry*, 63 Ill. 2d at 9.) Since the *Mayberry* decision, all Illinois appellate districts have upheld similar classification schemes involving other drug offenses. (*People v. Hermann* (1988), 180 Ill. App. 3d 939, 948, 536 N.E.2d 706.) Defendant's argument that he is a first-time offender is irrelevant under the statutory scheme here. *People v. Hermann*, 180 Ill. App. 3d at 948.

Legislation will survive a substantive due-process challenge so long as it is reasonably designed to remedy the evils the legislature has determined to be a threat to the public health, safety, and general welfare. (*People v. Upton* (1986), 114 Ill. 2d 362, 373, 500 N.E.2d 943.) The statute, therefore, is not unconstitutional although its penalties are based on the amount of substance containing a controlled substance. The need to eliminate the threat to society from drugs, whether sold by a major trafficker or small dealer, as recognized by the statute provides a reasonable basis for the statute's classification.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

GREIMAN, P.J., and RIZZI, J., concur.