THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GORDON DINWIDDIE, Defendant-Appellant.

First District (1st Division) No. 1—96—4412

Opinion filed September 30, 1998.—Rehearing denied November 2, 1998.

Rita A. Fry, Public Defender, of Chicago (Bruce C. Landrum, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Janet Powers Doyle, and Tyra Taylor-Bell, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:
Following a jury trial, defendant Gordon Dinwiddie was convicted of first degree murder and sentenced to 60 years in prison. Defendant appeals, contending that (1) the trial court erred in determining that defendant's statements were voluntary; (2) defendant was denied a fair trial; (3) defendant was not proved guilty beyond a reasonable doubt; (4) defendant was deprived of a fair trial by the prosecutor's closing argument; and (5) defendant's sentence of 60 years was excessive. For the reasons that follow, we affirm.

FACTS
On October 31, 1993, at approximately 5:30 p.m., the victim, 14-year-old Shawn Carey, arrived home from Robichaux field house. There was a Halloween party going on at the school, and Shawn asked his mother if he could return to the party. Shawn's mother let him return to the field house, which was four blocks away.

Ardell Moore lived across the street from Robichaux Park. He heard seven or eight gunshots fired in rapid succession and heard a car speeding away. Mr. Moore heard someone yelling for help. He opened his door and saw Shawn fall backward. His wife called 9-1-1. Shawn was taken to Christ Hospital, where he died from a gunshot wound to the back. The bullet removed from the victim's body was fired from a Smith & Wesson 9 millimeter pistol.

Sergeant Sammie Young, an off-duty sergeant with the Cook County sheriff's department, was walking toward Robichaux field house when he heard the sound of gunfire and vehicles speeding away. Sergeant Young testified that he saw a brown Riviera and a blue Monte Carlo traveling at a fast rate of speed away from the scene.

At 5:45 p.m., Officer Casey Janota and Officer Frank Dragasic received a radio dispatch. The officers began looking for suspects in a

brown Buick Riviera and a blue Chevy Monte Carlo. Four .32-caliber cartridge casings were found in the alley where the shooting occurred.

The next day, November 1, 1993, Officer Edward Skeerett and his partner saw a blue 1979 Chevrolet Monte Carlo traveling at a high rate of speed, make a sharp turn and then stop in a vacant lot. Three males exited the car and ran. The officers caught Corey Clark and defendant Gordon Dinwiddie. The car was allegedly stolen. Defendant was arrested, taken to the police station and later released to his father's custody.

On November 2, 1993, around 6:30 p.m., defendant was at home when the doorbell rang. Defendant's stepfather, Mr. Grantlen, answered the door and let two police officers enter with Corey Clark. Mr. Grantlen called defendant into the kitchen. Officer Waller advised defendant that they suspected him of committing murder and read defendant the *Miranda* warnings. Defendant asked to speak with the officers outside the presence of his ill stepfather. The two officers, Corey Clark and defendant went into the basement.

While in the basement, defendant admitted that, at the time of the shooting, he was driving the Buick and that Corey and James Cockerham were passengers. Defendant said he drove into an area near Robichaux Park where he saw members of a rival gang, the Blackstones. The Blackstones threw gang signs in defendant's direction. Defendant responded by taking a 9 millimeter weapon provided by James Cockerham, reaching across the passenger side of the car and firing out the window toward the boys. Defendant said he gave the weapon back to James Cockerham and sped away.

Defendant was arrested after confessing to the murder. Defendant then directed the police to where they could find James Cockerham. The officers arrested James Cockerham at his home and recovered a .380 semi-automatic and several boxes of ammunition, which were on the table.

At about 7:30 p.m, on November 2, 1993, defendant arrived at the 111th Street police station. Detective McCann learned that there were no youth officers currently available. Detective McCann interviewed defendant after reading him his *Miranda* warnings. Defendant waived his rights and again confessed to the shooting during his interview with Detective McCann. At about 11:20 p.m., Assistant State's Attorney Caren Armbrust arrived at the police station. Assistant State's Attorney Armbrust identified herself and read *Miranda* warnings to defendant. Also present were youth officer Burke and Detective McCann. Defendant again confessed to the shooting. Defendant gave a handwritten statement, which he reviewed with Assistant State's Attorney Armbrust before signing. While defendant was alone in the

room with Assistant State's Attorney Armbrust, he stated that he had not been threatened or treated poorly by the officers.

The jury returned a verdict of guilty for first degree murder. On October 16, 1996, after hearing testimony in aggravation and mitigation, the trial court sentenced defendant to 60 years in the Illinois Department of Corrections. Defendant appeals his conviction and sentence.

I

Defendant first argues that his confession was not voluntary. Specifically, defendant contends that the police took him to the basement of his house and physically coerced him into confessing. Defendant confessed to the murder in the basement. Defendant repeated the same confession at Area 2 and again to Assistant State's Attorney Armbrust with juvenile officer Burke present. Defendant asserts that his mother attempted to see him at the station but was not allowed to do so. Defendant asserts that he was interrogated without the benefit of counsel or his mother and that he was questioned at least twice without a juvenile officer present.

■ The standard of review on a question of the voluntariness of a confession is whether the trial court's finding is contrary to the manifest weight of the evidence. *People v. Melock*, 149 Ill. 2d 423, 448, 599 N.E.2d 941 (1992). A trial judge need be convinced only by a preponderance of the evidence that the statement was voluntary. *People v. McCleary*, 208 Ill. App. 3d 466, 567 N.E.2d 434 (1990). Our supreme court has repeatedly stated that "[t]he finding of the trial court on the voluntariness of a confession will not be disturbed unless it can be said that it is contrary to the manifest weight of the evidence." *People v. Davis*, 97 Ill. 2d 1, 20, 452 N.E.2d 525 (1983). This standard of review applies to a trial court's rulings concerning the admissibility of a juvenile's confession as well. *In re Lamb*, 61 Ill. 2d 383, 388, 336 N.E.2d 753 (1975).

■ Moreover, our supreme court has indicated that the determination of whether a confession is given voluntarily depends on the totality of the circumstances. *People v. Prude*, 66 Ill. 2d 470, 475, 363 N.E.2d 371, 373 (1977); *People v. Johnson*, 44 Ill. 2d 463, 468, 256 N.E.2d 343 (1970). Finally, it is the province of the trial judge in deciding whether a statement was coerced to resolve any conflicts in the evidence and to determine the credibility of the witnesses. *People v. Clements*, 135 Ill. App. 3d 1001, 1008, 482 N.E.2d 675 (1985). We find that, looking at the totality of the circumstances, the trial court's finding that defendant's confession was voluntary was not against the manifest weight of the evidence.

■ The benchmark for voluntariness is whether the defendant's will was overborne at the time, not whether he would have confessed in the absence of interrogation. *People v. Brown*, 169 Ill. 2d 132, 144, 661 N.E.2d 287 (1996). Defendant confessed three times. This is not a situation where defendant's will was initially overborne by the police officers but after he saw his mother he recanted his confession. To the contrary, defendant first confessed at his home after only a 15- to 20-minute interview with the police.

After hearing the police officers' testimony, the trial court found that defendant was not physically abused and his will was not overcome by either mental or physical coercion. Our review of the record confirms this. Defendant's stepfather was upstairs while the police were speaking with defendant for 15 to 20 minutes in the basement of his home. At the hearing on the motion to suppress, defendant's stepfather testified as follows:

"Q. Now, when Gordon went downstairs did you hear any screams down there?

A. No, I didn't.

Q. Did you hear any banging down there?

A. No.

Q. Did you hear any voices down there at all?

A. No, I didn't. I didn't."

It is for the trial judge to determine the credibility of witnesses, to weigh the evidence, draw reasonable inferences therefrom and to resolve any conflicts in the evidence. *People v. Frazier*, 248 Ill. App. 3d 6, 13, 617 N.E.2d 826 (1993). Here, it cannot be said that a conclusion opposite that drawn by the trial judge is clearly apparent.

Moreover, we find that defendant's family received reasonable notification that defendant was being taken into custody. The Juvenile Court Act of 1987, section 2—6(1), states, in relevant part, as follows:

"A law enforcement officer who takes a minor into custody under Section 2—5 shall immediately make a reasonable attempt to notify the parent or other person legally responsible for the minor's care or the person with whom the minor resides that the minor has been taken into custody and where he or she is being held." 705 ILCS 405/2—6(1) (West 1996).

The police officers arrested defendant at his home and in the presence of Lenzey Grantlen, his stepfather, at about 6:40 p.m. on November 2, 1993. Defendant was placed in custody in the presence of his stepfather. Defendant's stepfather told the officers that he could not come to the police station. Further, defendant's stepfather testified during the hearing on the motion to suppress that the "first thing" he did when his wife came home was to tell her what happened and that

defendant left with the police. Obviously, the defendant's mother also had notice that defendant had been taken into custody.

Defendant contends that his mother was not allowed to see him, that he was denied the benefit of counsel and that he was questioned without a youth officer present. We find defendant's arguments unpersuasive. The trial court determined, and our review of the record indicates, that there is ample evidence defendant was given his *Miranda* warnings, his mother was allowed to see him and a youth officer was present.

As previously mentioned, defendant initially confessed in his basement after only a 15- to 20-minute interview with the officers. Once at the police station, defendant's mother was able to see and speak with defendant within approximately an hour of her arrival.

"Q. And do you recall approximately how long you were at the police station before you saw your son?

A. I don't remember how long I was there. I was there for a little while, awhile before I talked to him, before I seen him.

Q. Okay. Would it be fair to say you were there for more than an hour?

A. Maybe about—I don't know exactly, but no, not more than an hour. It wasn't—not before I seen him, no.

Q. So, it would have been less than an hour before you saw him?

A. Yes, I believe I was there less than an hour."

Defendant was 16 years old and had a history of contact with the criminal justice system. He had a prior attempted murder charge, which was dismissed, where defendant had allegedly shot a person while that person was trying to flee. Defendant also had been involved in a prior auto theft. Defendant's prior experience dealing with the police and the legal system further supports the conclusion that he voluntarily waived his right to counsel, knowingly chose to speak with the authorities and understood his rights.

In this case, the evidence indicated that defendant had been properly warned of his *Miranda* rights and the possibility that he could be charged as an adult, there was no physical evidence corroborating his claim of abuse and the defendant said in his written statement that the police treated him well. Both his parents were properly notified, a youth officer was present, and the defendant had contact with his mother during the interview process. Most importantly, the defendant confessed within minutes of the police first arriving at his home and physical evidence corroborated his confession. Moreover, the record does not indicate that defendant was sleep deprived, unfed, left alone in a room for hours on end or otherwise mistreated. Based on the totality of the circumstances, the finding of the trial court that the

defendant's statement was voluntary is not against the manifest weight of the evidence.

## II

Defendant next argues that the trial court erred in admitting a weapon that was not connected to the crime and admitting testimony regarding the weapon's recovery. Detective Waller recovered a loaded .380 pistol and a box of ammunition during codefendant James Cockerham's arrest. Defendant asserts that this weapon was not connected to the crime since the murder weapon was a 9 millimeter and the bullet recovered from the victim was also a 9 millimeter.

■ As a general rule, weapons are admissible if there is some proof to connect them to the crime. *People v. de la Fuente,* 92 Ill. App. 3d 525, 414 N.E.2d 1355 (1981). It is not necessary for the State to prove that the weapon was the one actually used in the crime. *People v. Lee,* 242 Ill. App. 3d 40, 610 N.E.2d 727 (1993). It is only necessary that the weapon be suitable for commission of the crime and in some way be connected to the crime. *People v. Free,* 94 Ill. 2d 378, 447 N.E.2d 218 (1983).

■ Here, Detective John McCann testified during the jury trial that "[defendant] said that he had been riding in a stolen Riviera with two of his friends, Corey Clark and James Cochran [sic] I believe his name is. He said they had been driving around and that James had a nine millimeter with him. *** And he says while they were riding around there he told me that James also had another gun. He said he had a .380." Accordingly, this testimony places the .380 weapon in the same car that defendant was in at the time of the shooting. It is further relevant since recovery of the .380 semi-automatic weapon from James Cockerham's home corroborated the defendant's confession. We find that the trial court did not err because a reasonable jury could find that the .380 was connected to the crime.

## III

Defendant's third contention is that he was not proved guilty beyond a reasonable doubt. Defendant argues that the State did not provide testimony or physical evidence linking defendant to the crime. He asserts that the only evidence offered by the prosecution was defendant's confession, and his confession did not establish that defendant was guilty beyond a reasonable doubt because it was obtained through physical coercion, without the benefit of counsel or the presence of his mother or a juvenile officer.

■ When considering the sufficiency of the evidence on appeal, we view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the ele-

ments of the crime proven beyond a reasonable doubt. *People v. Young*, 128 Ill. 2d 1, 49, 538 N.E.2d 453 (1989). Moreover, a reviewing court will not reverse a conviction unless the evidence is so unsatisfactory as to raise a reasonable doubt of defendant's guilt. *People v. Furby*, 138 Ill. 2d 434, 455, 563 N.E.2d 421 (1990). In addition, the trier of fact is free to accept or reject any or all of a witness' testimony. *People v. Harris*, 220 Ill. App. 3d 848, 863, 580 N.E.2d 1342 (1991).

■ It is for the trier of fact to determine the reliability of defendant's statements and whether his confession was credible. Because it is the responsibility of the trier of fact to determine the credibility of witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from the evidence, a reviewing court will not retry a defendant when considering the sufficiency of evidence. *People v. Furby*, 138 Ill. 2d at 455. As we discussed under defendant's first contention, we find that defendant's confession was given voluntarily. As such, it was the province of the jury to determine the weight to be given the confession.

■ Additionally, the evidence presented at trial indicated that the victim was shot with a 9 millimeter bullet. Defendant stated that he used a 9 millimeter weapon in the shooting. Defendant also stated that there was a .380 caliber gun in the stolen blue car he was driving at the time of the crime. During defendant's first interview with the police in his basement, he stated that he returned the .380 to codefendant James Cockerham after the shooting and then dropped James Cockerham off at his house. A .380 caliber gun and ammunition were found at the home of codefendant James Cockerham. Moreover, defendant admitted that he was driving a stolen Buick at the time of the shooting and that he abandoned the vehicle near some railroad tracks after the shooting. The police recovered a light brown Buick Riviera and the blue Monte Carlo used in the shooting. Defendant was observed by the police driving the blue Monte Carlo the day after the murder. Defendant further admitted that at the time of the shooting his codefendant, James Cockerham, had a .380 semi-automatic weapon with him in the blue Monte Carlo. Two days after the shooting, a .380 semi-automatic weapon and ammunition were recovered from James Cockerham's home by the police. This independent evidence taken collectively corroborated defendant's confession. Considering the record in total, there was clearly sufficient evidence for a rational trier of fact to find defendant guilty.

## IV

Next, defendant contends that he was deprived of a fair trial by the prosecutor's closing argument.

■ Prosecutors are allowed wide latitude in closing argument and may comment upon the evidence and all legitimate inferences therefrom. *People v. Albanese*, 102 Ill. 2d 54, 77-78, 464 N.E.2d 206 (1984). Although there are certainly instances of prosecutorial misconduct that require reversal, the behavior must be particularly egregious and must constitute a material factor in the conviction. *People v. Johnson*, 264 Ill. App. 3d 1000, 1011, 637 N.E.2d 767 (1994). Because the circuit court is in a better position than a reviewing court to determine the prejudicial effect of a remark made during closing argument, absent a clear abuse of discretion, its ruling should be upheld. *People v. Peeples*, 155 Ill. 2d 422, 483, 616 N.E.2d 294 (1993).

■ Here, defendant contends that improper remarks were made during rebuttal closing arguments. Specifically, defendant states that during rebuttal, the prosecutor repeatedly asked for evidence to corroborate defendant's alibi in addition to the testimony of defendant's relatives. Defendant's posttrial motion states, "The Assistant State's Attorney made prejudicial and erroneous statements in closing argument designed to arouse the prejudices and passions of the jury. The State argued that the defendant's mother did not contact the police to tell them of the defendant's alibi."

We find defendant's contentions without merit. The prosecutor's remarks during rebuttal were in essence attacking the credibility of the defendant's relatives. The credibility of witnesses is a proper subject for closing argument, if it is based on evidence or inferences drawn from it. *People v. Hudson*, 157 Ill. 2d 401, 445, 626 N.E.2d 161 (1993). Here, the prosecutor's argument concerning the testimony of defendant's relatives was justified by the evidence. Even if the prosecutor's remarks may have been improper, taken in the context of the entire argument, they were not so inflammatory as to have denied defendant a fair trial. Comments made in closing argument must be taken in context and will not require a new trial unless the result of defendant's trial would have been different. *People v. Wilson*, 257 Ill. App. 3d 670, 683, 628 N.E.2d 472 (1993).

V

Defendant's last contention is that, based on defendant's age, his sentence of 60 years' imprisonment for first degree murder is excessive. Defendant argues that he was only 16 years old at the time of the crime and had only one prior conviction for auto theft.

■ A circuit court's imposition of a sentence is entitled to substantial weight and deference, since it is in the best position to determine the circumstances of the case and to evaluate the record made at the hearing in aggravation and mitigation. *People v. Burke*,

164 Ill. App. 3d 889, 518 N.E.2d 372 (1987). In order to reach a reasoned determination as to the proper sentence to impose, the circuit court must look to the particular circumstances of each case and take into consideration the defendant's credibility, demeanor, general moral character, mental ability, social environment, habits, and age. *People v. Heredia*, 193 Ill. App. 3d 1073, 1083, 550 N.E.2d 1023 (1989).

■ First degree murder is a Class X offense. The sentencing guidelines specify that the term of imprisonment for first degree murder shall not be less than 20 years and not more than 60 years. 730 ILCS 5/5—8—1(a)(1)(a) (West 1996). Where a sentence is imposed within statutory limits, it will not be disturbed on appeal unless there has been an abuse of discretion. *People v. Gutirrez*, 205 Ill. App. 3d 231, 564 N.E.2d 850 (1990).

At sentencing, Darnell Mitchell testified that in May of 1993, the defendant shot him twice in the back, after a prior altercation. The court also heard evidence that defendant stole a car in September of 1993.

We find that defendant's 60-year sentence was well within the statutory range for first degree murder. The trial court clearly evaluated the evidence in aggravation and mitigation, defendant's age and his potential for rehabilitation.

Moreover, the seriousness of the crime has been recognized as the most important factor to be considered in sentencing. *People v. Marsan*, 238 Ill. App. 3d 470, 473, 606 N.E.2d 344 (1992). In the instant case, defendant was convicted of first degree murder of an innocent 14-year-old victim who was merely returning to a Halloween party at Robichaux field house.

In light of all of the foregoing, defendant's conviction for first degree murder and sentence of 60 years' imprisonment are affirmed. As part of our ruling, pursuant to *People v. Nicholls*, 71 Ill. 2d 166, 374 N.E.2d 194 (1978), and the Counties Code (55 ILCS 5/4—2002.1 (West 1992)), we grant the State's request and assess defendant $100 as costs for this appeal.

Affirmed.

O'BRIEN, P.J., and GALLAGHER, J., concur.