2023 IL App (1st) 220846-U

No. 1-22-0846

Order filed May 19, 2023

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 14332 |
| | ) | |
| JORGE MARTINEZ, | ) | Honorable |
| | ) | Joanne F. Rosado, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Justices Mitchell and Lyle concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We reverse the circuit court's orders granting the defendant's motions to bar evidence of the recovery of a certain firearm at trial and remand for further proceedings consistent with this order.

¶ 2     The State appeals from the circuit court's orders granting defendant Jorge Martinez's motions to bar testimony regarding the recovery of a firearm.[1] The State contends that the circuit

---

[1] While the notice of appeal indicates that the State was also appealing an order of the circuit court granting Martinez's motion to bar forensic testimony, the State acknowledges on appeal that it "deliberately" chose not to

court "erred in barring testimony about defendant leading the police to the firearm that he used to shoot the two victims." Martinez maintains that circuit court properly barred testimony about the recovery of the firearm. For the following reasons, we reverse the circuit court's orders precluding evidence of the recovery of the two firearms and remand.

¶ 3                                  I. BACKGROUND

¶ 4      On July 25, 2013, Martinez was charged with multiple counts of first-degree murder for the May 21, 2008, shooting death of Francis Oduro, and with multiple counts of attempted first-degree murder for the shooting of Anthony Dillon. Martinez was also charged with one count of aggravated battery with a firearm.

¶ 5      The parties filed several motions *in limine* pertaining to the events surrounding Martinez's prior arrest for criminal trespass, which included him leading the police to two firearms, as well as his statements to a prison informant regarding the shootings in question. In 2019, over the course of two hearings, Judge Hennelly heard the following testimony regarding whether the prison informant was reliable.

¶ 6      Sergeant Flatley of the Chicago Police Department testified that on June 28, 2008, he and his partner, Officer Daly, were part of a team assigned to investigate weapons crimes. At 7:49 p.m. that evening, they were at 4406 North Magnolia when they saw a vehicle pulling out of the alley. When the occupants saw the police officers approaching the vehicle, they fled. Martinez had been in the driver's seat. The officers detained Martinez and the passenger and transported them to the station to process them for the offense of criminal trespass to a motor vehicle.

---

challenge "the circuit court's order barring forensic testimony that the .357 firearm was one of 116 makes and models that could have fired the bullets here."

¶ 7    After processing at the station, Martinez directed Sergeant Flatley to two firearms. The first was located at 1410 West Wilson, where Martinez lived with his mother. The recovered firearm was a .38 caliber revolver with live rounds. Next, Martinez directed Sergeant Flatley to an apartment building on the 4400 block of Racine and told them to look at the bottom of a staircase. Underneath the bottom step, Sergeant Flatley removed a piece of wood and recovered a .357 caliber revolver. Sergeant Flatley took both firearms to the police station and inventoried them under separate numbers. The .38 caliber revolver was destroyed by police in September 2008. The .357 revolver had previously been reported stolen, so it was preserved. The .357 revolver was examined and was neither identified nor excluded as the murder weapon in this case.[2] It was eventually returned to its rightful owner.

¶ 8    In April 2010, Detective Leavitt and his partner, Officer Marszalec, both of whom had investigated the shooting death of Oduro, received a letter from Frederick Lambert, an inmate at Lawrence Correctional Center. It stated that Martinez, a fellow inmate, approached him stating that he thought he was soon going to be charged in the shooting death of Oduro. Lambert stated that Martinez asked Lambert to "show him how to beat a murder case," and that Martinez would in turn "buy me $50 worth of commissary." Martinez told Lambert that he killed "the South African guy" and attempted to murder "a rival gang member named Anthony." Lambert stated that Martinez drew out a diagram to illustrate where the two victims were standing when he and his "buddy" were able to sneak up behind the victims.

¶ 9    Detective Leavitt met with Lambert on April 23, 2010, in the presence of an Assistant State's Attorney. Lambert provided them with copies of the maps and diagrams that he had

---

[2] There was some confusion during the hearings about which gun had been destroyed, and which had been preserved and tested, but ultimately, defense counsel agreed that the .357 revolver was the gun that had been preserved and "was found to be neither identified nor eliminated as the possible weapon ***."

received from Martinez. In one of the diagrams, there was a depiction of where Martinez had hidden the gun in relation to where the shooting had taken place. It depicted the cross streets of where he hid the gun, "under the staircase of his friend's house."

¶ 10    On May 22, 2013, Lambert testified before a grand jury that Martinez told him he took the gun he used in the shooting to a friend's house named Drey after the shooting and hid it under the steps. Lambert testified that Martinez told him that "later he gave the guns to the police." Lambert is not from Chicago and does not know the area.

¶ 11    Alexis Bean of the Illinois State Police (ISP) Forensic Science Center testified as an expert in the field of forensic ballistics identification. She ran a search on the general rifling characteristics (GRC) of the two fired bullets that had been recovered and generated a list of 116 makes and models of firearms that have a similar GRC.[3]

¶ 12    During the hearing, defense counsel noted that Lambert had not been called as a witness and argued that it should be used as a factor against reliability because his demeanor could not be observed, and he was not available for cross-examination. The State responded that there was no requirement that an informant testify. Defense counsel asked if Lambert was refusing to testify or if he was asking for money, to which the State responded, "He did not ask for money."

¶ 13    On November 21, 2019, Judge Hennelly, after hearing the evidence that had been presented over the course of the two hearings, noted that according to section 5/115-21(c) of the Code of Criminal Procedure (Code), when considering the reliability of an informant, he was to consider several factors. 725 ILCS 5/115-21(c) (West 2018). He also noted that the prosecution's burden was to show that the informant was reliable by a preponderance of the evidence. The judge highlighted two facts: (1) that Martinez's fingerprints were found on the document submitted by

---

[3] The .38 caliber revolver was excluded from this list, but the .357 revolver was not.

Lambert to the police, and (2) that Martinez acknowledged on a recording the conversation he had previously had with Lambert. Judge Hennelly stated that he was not making a determination as to whether Lambert was credible or believable, because that would "be the province of some other body, be it the court or be it the jury." Judge Hennelly found that the State proved by a preponderance of the evidence that Lambert was a reliable informant. On October 15, 2021, Judge Hennelly denied Martinez's motion to reconsider the ruling.

¶ 14    Subsequently, this case was transferred to Judge Rosado. On April 12, 2022, Martinez filed a motion to reopen the hearing on the admissibility of Lambert's testimony. According to the motion, defense counsel interviewed Lambert on April 1, 2022, following Lambert's release from prison. Lambert informed defense counsel that if called to testify as a witness at Martinez's trial, he would assert his Fifth Amendment right not to incriminate himself.

¶ 15    At a hearing on April 18, 2022, Lambert testified that he would assert his Fifth Amendment right if questioned at trial about his prior grand jury testimony. The State asked Lambert several questions about his grand jury testimony, and Lambert repeatedly responded that he had no memory of his grand jury testimony. Judge Rosado ruled that Lambert was allowed to testify at trial, and that he could not invoke his Fifth Amendment right not to incriminate himself.

¶ 16    On May 3, 2022, a hearing was held on Martinez's motion to "preclude any and all testimony regarding the examination of firearms turned over to CPD or ISP in this case." Judge Rosado stated, "I am barring testimony of it." When asked if that meant testimony of the characteristics of the firearm, Judge Rosado responded, "Yep." The State then asked:

"[T]the fact that the defendant tells Lambert that [he] turned over a firearm while

[he] was arrested for a [trespass to motor vehicle] at the address, all that stuff, and

that Sergeant Flatley did do those events, that doesn't seem to be precluded by that ruling?"

¶ 17    Judge Rosado responded:

"Well, those are not – those are not asked for in this with regards to what – obviously, Lambert is going to testify to what he's going to testify to or what he's not going to testify to. What the officer did as course of conduct at that point, he could say he got two guns, but I'm not going to let you say it's the murder weapon because – it's more prejudicial than probative and there's no proof that this is, in fact, the murder weapon."

¶ 18    When the State asked if that meant it would still be able to argue that Martinez told Lambert that the gun recovered was the murder weapon, Judge Rosado stated, "Again, whatever Mr. Lambert is going to testify to or not testify to is going to come in."

¶ 19    On May 4, 2022, Martinez filed a motion to preclude testimony regarding the recovery of the firearms. He argued that because Judge Rosado had prohibited the State from arguing that the recovered .357 firearm was the murder weapon, the State should also be precluded from introducing testimony "regarding the recovery of firearms at the alleged direction of the [d]efendant on June 28, 2008."

¶ 20    On May 18, 2022, a hearing was held on the motion to preclude testimony. Judge Rosado granted Martinez's motion *in limine* to preclude testimony about the recovery of the firearms, stating:

"With regards to the motion *in limine* to preclude testimony regarding the recovery of the firearm, that's granted. What else do we have to do? I'm just saying that with regards to that motion, that I believe it's more prejudicial than probative to

allow the information in with regards to when the guns were recovered. It is just used to bolster the testimony of Mr. Lambert and Mr. Lambert's testimony seems to be falling apart everywhere. As well as the fact that one weapon was destroyed and the second one was returned and was not properly handled or not properly taken care of. So thereafter I am granting that motion."

¶ 21 On May 25, 2022, defense counsel asked the trial court to "prohibit the State from introducing any evidence regarding the arrest or stop or interaction that Mr. Martinez had with the police concerning the criminal trespass to vehicle as it's no longer relevant as your Honor already ruled that recovery of firearms which occurred during that interaction is not relevant." Judge Rosado responded, "It's not coming in at all." When defense counsel asked if that meant that Lambert could not talk about the recovery of the guns, Judge Rosado stated, "That's what I said."

¶ 22 The State filed its notice of appeal on June 3, 2022, in open court. Judge Rosado noted at that time:

"I would just clarify for the record, the reason the testimony would be barred, as I did bar the forensic testing and the recovery of the gun, the testimony would be barred because that's basically essentially trying to back door the barring of the gun and the testing. Therefore, I was not allowing the testimony to come in for something that has already been barred."

¶ 23 The State now appeals from the trial court's rulings precluding the introduction of all evidence related to the recovery of the .357 firearm.

¶ 24 II. ANALYSIS

¶ 25 On appeal, the State contends that evidence of the recovery of the .357 firearm is relevant, and its probative value is not substantially outweighed by the danger of unfair prejudice. Evidence

7

is generally admissible if it is relevant. Ill. R. Evid. 401 (eff. Jan. 1, 2011). Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ill. R. Evid. 401 (eff. Jan. 1, 2011). Even relevant evidence, however, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 26    Whether evidence is admissible is within the discretion of the trial court, and a reviewing court will not disturb that ruling absent an abuse of discretion. See *People v. Brand*, 2021 IL 125945, ¶ 36. An abuse of discretion will be found only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *People v. Illgen*, 145 Ill. 2d 353, 364 (1991). However, a trial court also "abuses its discretion when it makes an error of law." *People v. Turner*, 373 Ill. App. 3d 121, 124-25 (2007) (the trial court made a mistake of law in ruling that a hearsay exception did not apply when the statement to be admitted was not a declarant's confession to the crime for which the defendant had been charged).

¶ 27    The function of a jury is to "assess the credibility of witnesses, weigh the evidence presented, resolve conflicts in the evidence, and draw reasonable inferences from the evidence." *People v. Moss*, 205 Ill. 2d 139, 164 (2001). To perform its function properly, the jury must be given as much relevant, admissible evidence as possible. *People v. Ward*, 2011 IL 108690, ¶ 34. Without that evidence, the reliability of the jury's verdict may be called into question. *Id.*

¶ 28    Accordingly, the plain language of Rule 403 favors admission of relevant evidence. *People v. Epstein*, 2022 IL 127824, ¶ 22. "Under the rule, relevant evidence may not be excluded simply because its probative value is outweighed by its prejudicial effect." *Id.* "Rather, by its plain terms,

Rule 403 provides for exclusion of relevant evidence only if its probative value is *substantially* outweighed by the risk of unfair prejudice." (Emphasis in original). *Id.* The jury is therefore placed in its proper position of considering relevant evidence and assigning the appropriate weight. *Id.*

¶ 29    In the case at bar, we find that the trial court abused its discretion in barring evidence of the recovery of the .357 firearm because it made an error of law by repeatedly referencing the wrong standard when deciding whether the relevant evidence should be excluded. Specifically, the court considered whether the evidence was "more prejudicial than probative." As stated above, the correct standard when deciding whether to exclude relevant evidence is whether its probative value is substantially outweighed by the danger of unfair prejudice. Ill. R. Evid. 403 (eff. Jan. 1, 2011).

¶ 30    Moreover, even if we agreed with Martinez that the court knew and applied the proper standard despite not using the terms "substantially" and "unfair", we would nevertheless find that the trial court abused its discretion in precluding the evidence of the recovery of the .357 firearm. Approximately six weeks after the shootings in question, Martinez directed police to an apartment building on Racine and told them where to find the .357 firearm hidden behind a piece of wood underneath the bottom step. Less than two years later, Sergeant Flatly received a letter from Lambert, a fellow inmate of Martinez's, stating that Martinez told him he shot someone named "Anthony" and a "South African guy," and then hid the gun under the steps of a friend's house. Martinez drew two diagrams of the scene for Lambert, and noted where he shot the victims and where he hid the gun used in the offense. The location of where he hid the gun coincided with the location of the .357 firearm that was recovered by police after Martinez led them there. This evidence is highly probative as it connects Martinez with the shooting and a potential murder weapon.

¶ 31 Further, the danger of unfair prejudice does not substantially outweigh the probative value. Unfair prejudice means that the evidence in question will somehow cast a negative light upon a defendant for reasons that have nothing to do with the case on trial. *People v. Prather*, 2012 IL App (2d) 111104, ¶ 24. In other words, the jury would be deciding the case on an improper basis, commonly an emotional one, "such as sympathy, hatred, contempt, or horror." *People v. Lewis*, 165 Ill. 2d 305, 329 (1995); M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 403.1 (4th ed. 1984). Here, nothing in the record supports a conclusion that the evidence of the recovery of the .357 revolver would cast Martinez in a negative light that would have nothing to do with the case on trial. There is also no indication that it would likely arouse feelings of sympathy, hatred, contempt, or horror from a jury. Moreover, as previously noted, evidence should not be excluded on the basis of unfair prejudice unless the danger of such prejudice *substantially* outweighs its probative value. Ill. R. Evid. 403 (eff. Jan. 1, 2011). Here, the evidence has significant probative value, as it tends to show that Martinez shot the victims and then led police officers to the firearm he used in the shooting, while the danger of unfair prejudice is low.

¶ 32 We find *People v. Dinwiddie*, 299 Ill. App. 3d 636 (1998) to be instructive. In *Dinwiddie*, a loaded .380 pistol and box of ammunition recovered during the arrest of a codefendant was held to be admissible at the defendant's trial, even though the murder weapon was a 9-millimeter firearm. The State did not have to prove that the weapon was actually used in the crime so long as the weapon was "suitable for commission of the crime and in some way be connected to the crime." *Id*. at 636. The defendant had told police that he had been in a car with the codefendant and learned that the codefendant had both a 9-millimenter and .380 pistol with him at the time of the shooting. *Id*. The recovery of the .380 pistol at the codefendant's house was admissible because it corroborated the defendant's confession. *Id.*

¶ 33    Here, the probative value of the recovery of the .357 firearm is even higher than that of the recovery of the .380 pistol in *Dinwiddie*. Martinez himself led police to the location of the .357 firearm in this case, and he told Lambert that he hid that firearm there after using it in the shootings at issue.

¶ 34    Finally, we note that Lambert's essential recantation of his entire account of what Martinez allegedly told him has no bearing on whether the evidence of the recovery of the .357 firearm is admissible. The trial court ruled that Lambert will be compelled to testify, at which time he will inevitably be confronted with his sworn grand jury testimony, and it will be up to the factfinder to weigh that evidence and testimony. Credibility determinations are for the trier of fact, not for a judge to determine under Rule 403. *Epstein*, 2022 IL 127824, ¶ 30. "The critical point *** is that the factfinder should weigh all of these questions of fact and make the credibility determinations required to assign the appropriate weight to the evidence and testimony." *Id*. Accordingly, we find that the trial court abused its discretion in precluding the relevant evidence surrounding the recovery of the .357 firearm, as its probative value is not substantially outweighed by the danger of unfair prejudice.

¶ 35                                    III. CONCLUSION

¶ 36    For the foregoing reasons, we reverse the trial court's May 18, 2022, order granting Martinez's motion *in limine* to preclude testimony regarding the recovery of the .357 firearm, we reverse its May 25, 2022, oral ruling stating that Lambert could not testify as to what Martinez told him about the .357 firearm, and we remand for further proceedings consistent with this order.

¶ 37    Reversed and remanded.