No. 2--05--0808      Filed: 4-19-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 04--CF--1982 |
| JOHN A. TURNER, | ) ) ) | Honorable Michael J. Burke, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Following a bench trial, defendant, John A. Turner, was convicted of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2004)). He was sentenced to one year in prison. On appeal, he contends that (1) the trial court erred in excluding as irrelevant a third party's admissions to other crimes; and (2) he was not proved guilty beyond a reasonable doubt. We agree with his first contention, and we remand for further proceedings consistent with this opinion.

I. BACKGROUND

At approximately 8:30 a.m. on June 16, 2004, police officers were informed of an attempted retail theft at a store in Darien. The dispatch described a person later identified as Andrew Hornbacker, who was driving a Chevy truck with Arkansas plates. Officers spotted the truck, followed it, and stopped it when it exceeded the speed limit.

Defendant was a passenger in the truck. He was cooperative and responsive to police questions, although officers stated that he appeared agitated, nervous, and irritated. Defendant told the officers that he owned the truck but that he was not driving it because his Illinois driver's license was suspended. He stated that he had a valid Arkansas license. He added that he had picked up Hornbacker that morning and that they were going to the home of Hornbacker's mother. Defendant consented to a search of the truck.

During the initial search, officers found various commercial items. In a shoebox behind the passenger seat, they found various drug paraphernalia, including hypodermic needles, metal tins with burnt residue, "a Band-[A]id type patch," a scouring pad, and a bent wire hanger, along with a prescription bottle bearing Hornbacker's name. Hornbacker admitted that he owned the items in the shoebox, that he had stolen the commercial items, and that he steals to support his drug addiction. Defendant admitted that he used marijuana and cocaine on occasion, but he denied the use of hypodermic needles.

Both defendant and Hornbacker were arrested. After the arrest, Officer Dean Anders continued the search. In a small storage area on the passenger-side dashboard, Anders found a key ring with an attached metal canister. No keys were attached to the ring. Inside the canister was a white powdery residue that was later discovered to contain traces of cocaine. According to Anders, defendant admitted that he owned the key ring and canister, and he said that he used the canister to store prescription medicine for ulcers. Anders did not ask whether cocaine was ever stored in the canister or when defendant last handled it. According to defendant, however, he denied knowledge of the canister. He stated that he was never asked about it and that he did not suffer from ulcers. At the police station, he completed a written statement that did not mention the canister.

Defendant was charged with possessing the cocaine. Noting that Hornbacker could not be located to testify, defendant moved in limine to admit Hornbacker's statements, particularly his admission to owning the items in the shoebox. At the hearing on the motion, defendant asserted that, in addition to the drug paraphernalia in the box, "at least one of the containers [in the box was] tested by the DuPage County Crime Lab [and] came back positive for heroin." Defendant argued that Hornbacker's statements were reliable enough to be admitted pursuant to Chambers v. Mississippi, 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038 (1973). He added that the statements were relevant, as "it would be relevant to know *** that there was another individual in the [truck] possessing paraphernalia and [a] controlled substance at that time." The court declined to conduct a Chambers inquiry, because it held that Chambers applies only "where an individual admits to the crime that the defendant is charged with. And, apparently Mr. Hornbacker did not admit to the crime that this defendant is charged with." The court then excluded the statements as irrelevant, because "it's a stretch to say because I admit one thing in the [truck] is mine therefore something else in the [truck] very well may be mine."

Determining that defendant owned the truck and admitted that he owned the key ring and used cocaine, the court found defendant guilty. The court reasoned that Hornbacker was in the truck for a relatively short time and thus would not have left items all over the vehicle. The court reasoned further that defendant permitted the search because he believed that the canister was empty.

Defendant filed a posttrial motion, which reiterated among other things that Hornbacker's statements were admissible. The court denied the motion and sentenced defendant, who now appeals.

## II. ANALYSIS

Defendant first contends that the trial court erred in excluding Hornbacker's statements on the basis that they were not relevant. The determination of whether evidence is relevant and admissible is a matter within the discretion of the trial court, and we will not reverse such a determination unless the trial court abuses that discretion. People v. Singleton, 367 Ill. App. 3d 182, 189 (2006). However, " '[a trial] court *** abuses its discretion when it makes an error of law.' " Najas Cortes v. Orion Securities, Inc., 362 Ill. App. 3d 1043, 1047 (2005), quoting Koon v. United States, 518 U.S. 81, 100, 135 L. Ed. 2d 392, 414, 116 S. Ct. 2035, 2047 (1996).

Here, defendant seeks to introduce Hornbacker's extrajudicial admissions. The trial court ruled that Chambers is inapplicable because Hornbacker did not confess to the crime with which defendant was charged. On appeal, the State continues this argument. We disagree.

A declarant's extrajudicial declaration, not under oath, that he, and not the defendant on trial, committed a crime is normally inadmissible as hearsay, even though the declaration is against the declarant's penal interest. People v. Cruz, 162 Ill. 2d 314, 342 (1994). However, where there are sufficient indicia of trustworthiness of the extrajudicial statement, it may be admissible under the statements-against-penal-interest exception to the hearsay rule. Cruz, 162 Ill. 2d at 343. To determine whether the extrajudicial statement is sufficiently trustworthy, a court should apply the objective indicia of trustworthiness articulated by the Supreme Court in Chambers to help determine whether the statement was made under circumstances that provide considerable assurance of its reliability. Cruz, 162 Ill. 2d at 343, citing Chambers, 410 U.S. at 300-01, 35 L. Ed. 2d at 311-12, 93 S. Ct. at 1048-49.

The State's argument that Chambers does not apply is based on the holding in People v. Arroyo, 328 Ill. App. 3d 277, 285 (2002), where the First District Appellate Court stated that "the

Chambers exception to the hearsay rule applies only to 'a declarant's unsworn, out-of-court statement that he committed the crime for which a defendant is charged.' " Arroyo, 328 Ill. App. 3d at 285, quoting People v. McCallister, 193 Ill. 2d 63, 100 (2000). The Arroyo court quoted McCallister as support for this proposition, but the relevant portion of McCallister states simply that "[i]n general, a declarant's unsworn, out-of-court statement that he committed the crime for which a defendant is charged is inadmissible hearsay, even though the statement is against the declarant's penal interest." McCallister, 193 Ill. 2d at 100. The quote from McCallister offers a statement of the general rule under Chambers, but we do not read it as expressing any limitation on that rule. Put plainly, the fact that McCallister stated that Chambers applies where a declarant confesses to the crime for which a defendant is charged does not necessarily mean that it applies only under that circumstance or that it does not apply where a declarant confesses to a crime for which a defendant is not charged. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence §804.7, at 780 (8th ed. 2004) ("To the extent that People v. Arroyo [citation] limits admissibility [under Chambers] solely to statements made by a third party admitting that such person committed the exact crime for which the defendant is on trial, the decision is incorrect, not supported by the authority cited, and should not be followed").

Arroyo offered no support for the above holding aside from its quotation of McCallister. Our reading of Chambers leads us to conclude that Arroyo is incorrect. In Chambers, the Supreme Court noted that hearsay statements against the declarant's penal interest were traditionally excluded from evidence because they were viewed as not being "inherently reliable." Chambers, 410 U.S. at 300, 35 L. Ed. 2d at 311, 93 S. Ct. at 1048. The prevailing view was that allowing such statements to be admitted would result in "the frequent presentation of perjured testimony." Chambers, 410 U.S. at

299, 35 L. Ed. 2d at 311, 93 S. Ct. at 1048. If the purpose of the exclusion, then, is to prevent presentation of false exculpatory hearsay testimony, it makes no difference whether the declarant confesses to the crime of which the defendant is accused or some other crime, so long as the declarant's statement is probative to the defense. In either case, the danger (presenting false hearsay statements to the jury) and the cure (requiring indicia of trustworthiness) are the same. The key question under Chambers is not precisely what crime the declarant confesses to, but whether the confession is against his or her penal interest, and, if so, whether it is sufficiently trustworthy to be admitted into evidence.

Accordingly, we hold that the trial court made a mistake of law in ruling that Chambers does not apply when the statement to be admitted is not a declarant's confession to the crime for which the defendant has been charged, and we agree with defendant that, if Hornbacker's statements are sufficiently trustworthy, they are admissible under the Chambers exception to the hearsay rule.

The State relies on its position that Chambers does not apply here, and it does not deny that Hornbacker's statements were sufficiently trustworthy under Chambers. Because the State's argument does not contest the point that, if Chambers applies, the statements were sufficiently trustworthy, we need not address the issue. We do note that, even though there are certainly situations in which the State may seek to discredit statements it obtains, that would seem unlikely under the particular circumstances presented here. Nevertheless, this decision should not be read as precluding the trial court from further inquiry under Chambers on remand.

In case the trial court is faced with a Chambers issue on remand, we offer one final note on Chambers. As noted above, Chambers articulated four indicia of trustworthiness to aid in determining the trustworthiness of a statement. There is some authority criticizing the first

Chambers indicium--that the statement was made to a close acquaintance shortly after the crime--as being " 'silly.' " See People v. Caffey, 205 Ill. 2d 52, 98 (2001) (declining to follow the characterization, but quoting it from Rivera v. Director, Department of Corrections, 915 F.2d 280, 282 (7th Cir. 1990)). While we are not prepared ourselves to characterize a portion of a Supreme Court decision as "silly," we do note that none of the four indicia of trustworthiness articulated in Chambers was meant to be dispositive. As our supreme court has stated, "[t]he presence of all four factors is not a condition of admissibility." Cruz, 162 Ill. 2d at 343. Rather, " '[t]hey are indicia, not hard and fast requirements.' " Cruz, 162 Ill. 2d at 343, quoting People v. House, 141 Ill. 2d 323, 390 (1990). "The question to be considered in deciding the admissibility of such an extrajudicial declaration is whether it was made under circumstances which provide 'considerable assurance' of its reliability by objective indicia of trustworthiness." Cruz, 162 Ill. 2d at 343, quoting People v. Bowel, 111 Ill. 2d 58, 67 (1986). Therefore, if the trial court conducts a Chambers inquiry, none of the indicia listed in Chambers, including the first indicium, should be considered controlling.

However, our analysis does not end with our discussion of Chambers. Even though Hornbacker's statements may be admissible under Chambers, there is another potential barrier to their admission. In seeking to admit Hornbacker's statements, defendant was seeking to admit evidence of other crimes, i.e., crimes other than the one with which he was charged. Our supreme court thoroughly discussed the law surrounding admission of other-crimes evidence in Cruz, 162 Ill. 2d 314, and we therefore provide a detailed discussion of that case to instruct our analysis here.

In Cruz, the defendant, who was charged with the sexual assault and murder of a young girl, introduced into evidence a confession from another man, Brian Dugan, to the same crimes. Cruz, 162 Ill. 2d at 347. Though the trial court allowed Dugan's confession to be admitted into evidence,

it did not allow the defendant to introduce evidence of five similar crimes Dugan admitted to having committed. See Cruz, 162 Ill. 2d at 340-42 (describing the facts of the other admitted crimes). On appeal of his conviction, the defendant argued to the supreme court that the evidence of Dugan's five admitted crimes and of the circumstances of his confessions to those crimes was admissible because (1) it was relevant to show modus operandi; (2) it corroborated the truth of Dugan's confession to the crime in Cruz; (3) it rebutted the State's proposition that the defendant committed the crime with Dugan, because Dugan committed the other crimes alone; and (4) it demonstrated that Dugan possessed the requisite motive (pedophilia) to have committed the crime in Cruz. Cruz, 162 Ill. 2d at 347.

The supreme court noted that the "basic rule [for the admissibility of all evidence] is that all relevant evidence is admissible unless otherwise provided by law." Cruz, 162 Ill. 2d at 348. "In addition to specific laws that may require exclusion, a court may generally exclude relevant evidence if its probative value is outweighed by such dangers as unfair prejudice, jury confusion, or delay." Cruz, 162 Ill. 2d at 348. As an "outgrowth of this principle" (Cruz, 162 Ill. 2d at 348), because " 'the law distrusts the inference that because a man has committed other crimes he is more likely to have committed the current crime' " (Cruz, 162 Ill. 2d at 348, quoting People v. Lehman, 5 Ill. 2d 337, 342 (1955)), evidence of other crimes is not admissible unless it is relevant for any purpose other than to show the propensity to commit crimes (Cruz, 162 Ill. 2d at 348).

Generally, when other-crimes evidence is offered, it is admissible "only where the other crime bears some threshold similarity to the crime charged." Cruz, 162 Ill. 2d at 349. Thus, generally, "mere general areas of similarity" (Cruz, 162 Ill. 2d at 349) between the other crime and the defendant's crime are sufficient to "ensure[] that the evidence is not being used solely to establish

a defendant's criminal propensities" (Cruz, 162 Ill. 2d at 349) and accordingly to make evidence of the other crime admissible. However, if the evidence is offered to show modus operandi, a " 'high degree of identity' between the facts of the crime charged and the other offense has been required." Cruz, 162 Ill. 2d at 349, quoting People v. Illgen, 145 Ill. 2d 353, 373 (191)).

As noted, the above rules are an outgrowth of the principle that evidence should not be admitted where its probative value is outweighed by unfair prejudice: the rule is designed to eliminate prejudice against the defendant caused by the State's introducing evidence of his other crimes. See Cruz, 162 Ill. 2d at 348. However, in Cruz (and in the current case), the other-crimes evidence is offered by the defendant as exculpatory evidence, not by the State as inculpatory evidence. In a case where the proposed other-crimes evidence is exculpatory, the concern with prejudice to the defendant disappears. Cruz, 162 Ill. 2d at 350, quoting 1 S. Gard, Illinois Evidence Manual 48 (Supp. 1990) (" 'reasons for exclusionary rule when applied to the defendant in a criminal action do not exist in the case of other persons' "). As such, exculpatory other-crimes evidence is admissible where "the evidence contains 'significant probative value' to the defense without any reference to the element of prejudice." Cruz, 162 Ill. 2d at 350, quoting People v. Tate, 87 Ill. 2d 134, 143 (1981).

The supreme court concluded its discussion of the rule surrounding exculpatory other-crimes evidence as follows:

"Other courts have also recognized that there is a distinction between the limits imposed on a defendant's use of other-crimes evidence to exculpate himself and the State's use of such evidence to prosecute him. See United States v. Cohen (11th Cir. 1989), 888 F.2d 770, 777; United States v. Aboumoussallem (2nd Cir. 1984), 726 F.2d 906, 911; United

States v. Stamper (W.D.N.C. 1991), 766 F. Supp. 1396, 1406; State v. Garfole (1978), 76 N.J. 445, 452-53, 388 A.2d 587, 591." Cruz, 162 Ill. 2d at 350.

Though the supreme court did not offer further explanation for its citation to the above cases, we note that the cited portion of each case refers to the idea that the risk of prejudice disappears when a defendant offers other-crimes evidence.[1] See Cohen, 888 F.2d at 777 ("[w]hen the defendant offers similar acts evidence of a witness to prove a fact pertinent to the defense, the normal risk of prejudice is absent"); Aboumoussallem, 726 F.2d at 911 ("we believe the standard of admissibility [of exculpatory other-crimes evidence] need not be as restrictive as when a prosecutor [offers] such evidence," because the risks of prejudice do not normally exist in the former case); Stamper, 766 F. Supp. at 1406, quoting Aboumoussallem, 726 F.2d at 911(" 'the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword,' because the ordinary risks of prejudice to the Defendant are absent in such a situation," and the only question remaining in such a case is the relevance of the evidence); Garfole, 76 N.J. at 452-53, 388 A.2d at 591 ("when the defendant is offering that kind of proof exculpatorily, prejudice to the defendant is no longer a factor, and simple relevance to guilt or innocence should suffice as the standard of admissibility").

Having laid out the rule for exculpatory other-crimes evidence, our supreme court in Cruz addressed the defendant's arguments that evidence of Dugan's other similar crimes was admissible. The supreme court first considered whether the evidence was admissible under a theory of modus operandi. It noted that, "while [the supreme court had earlier] dispense[d] with the consideration of

---

[1]Because the cited cases are based on rules of evidence not applicable here, we confine our discussion of those cases to the portions cited in Cruz.

prejudice when such evidence is offered by a defendant, *** 'for such evidence to have significant probative value' under modus operandi, there must be a substantial and meaningful link between the offenses being compared, regardless of which party offers the evidence." Cruz, 162 Ill. 2d at 351, quoting Tate, 87 Ill. 2d at 143. Thus, though the supreme court required a substantial and meaningful link between the other crimes and the crime at issue, its rationale was not the rationale typically used to exclude evidence of other crimes--that allowing the evidence would cause undue prejudice to the defendant--but rather that other-crimes modus operandi evidence inherently requires a substantial and meaningful link between offenses in order to be probative or relevant.

The supreme court held that much of the other-crimes evidence in Cruz was admissible under a theory of modus operandi. Cruz, 162 Ill. 2d at 351-52. It then noted that, because there was a "requisite degree of similarity" among all the crimes, all of the other-crimes evidence was "admissible to corroborate [Dugan's] statements about [the murder at issue in Cruz]." Cruz, 162 Ill. 2d at 352.

The State in Cruz argued that "other-crimes evidence may not be introduced to bolster a witness' credibility." Cruz, 162 Ill. 2d at 353. However, the supreme court responded that, in the case cited by the State in support of its argument, "the State had failed to demonstrate that the other-crimes evidence was used for anything other than showing the defendant's propensity to commit crime. Unlike the case at bar, [the case the State cited] was concerned with possible prejudice to the defendant." (Emphasis in original.) Cruz, 162 Ill. 2d at 353. The supreme court concluded by recapitulating the rule for the admissibility of other-crimes evidence: "if the other-crimes evidence contain[s] significant probative value to the defense, it [is] admissible." Cruz, 162 Ill. 2d at 353.

-11-

The above discussion indicates that the usual restrictions on other-crimes evidence exist to prevent prejudice to a defendant through admission of evidence of his or her other bad acts. However, in cases where the defendant presents the evidence, the risk of prejudice to the defendant disappears. Further, admission of other-crimes evidence of a nondefendant cannot be prejudicial to the nondefendant, because he or she is not a party to the case in which the evidence is offered. As the Seventh Circuit stated in United States v. Murray, 474 F.3d 938, 939 (7th Cir. 2007), "Since the jury is not being asked to judge that other person, 'the primary evil that may result from admitting such evidence against a defendant--by tainting his character--is not present.' Even if the evidence causes the defendant to be acquitted, and the other person is put on trial, his guilt or innocence will be determined on the basis of the evidence in his case, and not on the basis of the other crimes he committed." (Emphasis in original.) Accordingly, the general rule against admission of other-crimes evidence does not apply.

Instead, the test for admissibility of exculpatory other-crimes evidence is whether it is contains significant probative value to the defense. However, in many cases, similarity between the other crime and the crime at issue may still need to be established to demonstrate the probative value of the other-crimes evidence (see Cruz, 162 Ill. 2d at 351-52), and, if the defense offers the other-crimes evidence as being probative as to another potential suspect's modus operandi, a high degree of similarity between the crimes must still be established (see Cruz, 162 Ill. 2d at 351).

Significantly, the supreme court's discussion in Cruz leaves somewhat ambiguous its stance as to whether exculpatory other-crimes evidence could be admissible even where its only purpose is to show the propensities of another potential suspect. When the supreme court stated that the rule excluding other-crimes evidence is an outgrowth of the general rule that evidence must have

-12-

probative value greater than its potential prejudice in order to be admissible, and when it later stated that prejudice is not a concern where the defendant offers the other-crimes evidence, the implication was that the rule excluding other-crimes evidence does not apply to exculpatory other-crimes evidence. Based on the supreme court's language in Cruz, it seems likely that, in exculpatory other-crimes evidence cases, it intended to supplant the normal other-crimes rule with a rule that requires only that the proposed evidence have "significant probative value," regardless of whether it is offered only to show propensity. In order to demonstrate the practical significance of this distinction, we provide the following example. In a hypothetical case in which a police officer pulls over a car with two passengers--one with no criminal record and the other a habitual drug offender--and finds illegal drugs in the car, if the first passenger were charged with possession of the illegal drugs, the fact that the second passenger was a habitual drug user would have significant probative value as to which passenger possessed the drugs, even if such evidence would be purely evidence of propensity. Under the rule implied in Cruz, evidence of the second passenger's drug habit would be admissible as exculpatory evidence in the first passenger's trial but not as inculpatory evidence in the second passenger's trial.

However, we need not hold here that exculpatory other-crimes evidence is admissible even if only to show propensity, because, as discussed below, the evidence offered in this case is probative not only because it shows Hornbacker's propensity, but also as circumstantial evidence relevant to the very incident in question.

We note that the basic test for admissibility of any evidence, as articulated in Cruz, is whether its probative value outweighs its prejudice. Though the supreme court stated that prejudice was not a concern in exculpatory other-crimes evidence cases, it did not hold, as might at first glance be

expected, that exculpatory other-crimes evidence need only have some probative value to be admissible. Instead, it stated that the proposed evidence must have "significant probative value." Thus, the supreme court did more than remove the prejudice component from the basic admissibility inquiry--it simultaneously heightened the requirement for probativeness. The rationale we discern for this change in the standard for probativeness is the idea that prejudice normally acts as an ersatz minimum probativeness requirement, because evidence with negligible probative value will often be excluded by even a limited amount of potential prejudice. Without this check, a heightened probativeness requirement serves to continue to exclude minimally probative evidence. Cf. Murray, 474 F.3d at 941 ("Without insistence on more than mere 'similarity,' criminal trials may get out of hand, as defendants cast for other criminals *** on whom to pin their crime").

Based on the above discussion, we conclude that the question here is whether the evidence of Hornbacker's admission that he owned the drug-related items in the rear passenger seat shoebox has significant probative value to the defense.

Before moving on, we further note that this case is atypical even in the field of cases applying the relaxed rule for admissibility of exculpatory other crimes evidence. In the apparently typical exculpatory other-crimes evidence case, a defendant attempts to introduce evidence of another actor's unrelated crimes to support the proposition that, if that actor committed those crimes, it is more likely that he (and not the defendant) committed the crime at issue. In such a case, demonstrating similarity to the other actor's past misdeeds is virtually the only way a defendant can establish a connection between the other actor and the defendant's case so that the proposed evidence becomes probative. Thus, in such a case, similarity and probativeness go hand in hand. Here, however, the other actor (Hornbacker) and the other-crimes evidence involved precisely the same incident that led

to defendant's arrest, and thus the connection between the other actor and this incident is already established. Therefore, the need for similarity between the two crimes in order to establish the probative value of the proffered evidence should be decreased.

As a side note, we have further doubt that similarity is per se required in any event. Though the "similarity" shorthand suffices in most situations as a substitute for probativeness, evidence of one crime may be probative as to who committed a second crime even if the crimes are completely dissimilar, if, for example, the evidence of the first crime is used to show motive or opportunity. However, we need not decide that issue in this case.

With that, we move on to determine whether the evidence here was admissible as being significantly probative to the defense. " '[E]vidence is probative when to the normal mind it tends to prove or disprove a matter at issue.' " People v. Dresher, 364 Ill. App. 3d 847, 861 (2006), quoting Camco, Inc. v. Lowery, 362 Ill. App. 3d 421, 433 (2005). Here, an important matter at issue is whether defendant owned the key-ring canister found in a storage area on the passenger-side dashboard. If Hornbacker owned the key ring, then there is a greater chance that defendant did not. The fact that Hornbacker admitted to owning drug paraphernalia located behind the passenger-side seat of the truck tends to make more likely the proposition that he owned the key ring containing narcotics that was in the passenger-side dashboard of the truck, and thus it tends to make less likely the proposition that defendant owned the same key ring. In short, aside from the fact that it shows Hornbacker's propensity to commit drug crimes, his admission tends to show that he placed drug materials in the same truck at the same time that defendant is accused of placing drugs, and that potential fact has significant probative value to the defense. The Hornbacker evidence is not only evidence of another crime, it is also nonpropensity evidence of this crime.

We find People v. Ash, 346 Ill. App. 3d 809 (2004), to be instructive in this case. There, a police officer searched the defendant's outer clothing and found drug paraphernalia used for ingesting methamphetamine. The officer arrested the defendant for that offense and placed him into the backseat of a squad car. As he was later removing the defendant, the officer saw a packet of methamphetamine on the floorboard. The defendant was charged with possessing methamphetamine; he was not charged with possessing drug paraphernalia. The defendant was convicted, and he appealed.

On appeal, the defendant argued that, by allowing the officer to testify that the defendant had drug paraphernalia, the trial court violated the rule against evidence of other crimes. The appellate court disagreed. The court first noted that the State introduced the evidence not to show the defendant's propensity to commit crimes, but rather to establish the elements of the charged offense:

"[I]f the State charged a defendant with theft, evidence that the defendant possessed drug paraphernalia would serve no apparent purpose other than proving the defendant was a bad person and, therefore, just the type of person who would steal. ***

Obviously, in the present case, proving that Ash was a bad person was not the State's purpose in presenting evidence that he possessed drug paraphernalia. The paraphernalia had a greater significance. Because it was precisely the type of paraphernalia one would use to smoke methamphetamine, the paraphernalia was arguably related to the packet of methamphetamine Ash was charged with possessing.

*** The State had to prove that Ash 'knowingly possessed' the packet of methamphetamine ***. See 720 ILCS 570/402 (West 2002). If [the officer] found, in Ash's jeans pocket, the equipment for smoking methamphetamine ***, would those facts have any

tendency to make it more probable, in the mind of a reasonable person, that Ash knowingly possessed the methamphetamine that [the officer] found at his feet? Of course it would. *** [N]ot because Ash is a 'bad egg' but because, in common experience, people do not normally carry around this peculiar assortment of items unless they handle methamphetamine." Ash, 346 Ill. App. 3d at 814-15.

Having determined that the valid purpose of the evidence was to show the defendant's knowing possession, the court went on to note that possessing drug paraphernalia has the required similarity to possessing methamphetamine. Ash, 346 Ill. App. 3d at 816. The court concluded: "Constructive possession of a controlled substance often rests upon circumstantial evidence, and possession of drug paraphernalia tends to corroborate the knowing possession of the drug itself lying nearby." Ash, 346 Ill. App. 3d at 816.

Even though Ash involved inculpatory other-crimes evidence, its holding is illustrative here. Defendant was charged with the knowing possession of a controlled substance. 720 ILCS 570/402 (West 2004). His theory was that he did not knowingly possess the cocaine and that it was in his truck only because Hornbacker did. His purpose in seeking to introduce Hornbacker's admissions was not to show that Hornbacker was an unsavory character; his purpose was to show that Hornbacker knowingly possessed the cocaine that defendant allegedly knowingly possessed. Under the holding in Ash, the evidence was significantly probative for that purpose, and it would have been admissible even under the more rigorous requirements for introduction of inculpatory evidence.

Further, though the Ash court made a point of noting that the defendant's drug paraphernalia was "precisely" the type used to ingest methamphetamine (Ash, 346 Ill. App. 3d at 814), only "mere general areas of similarity" are normally required for other-crimes evidence to be admissible against

a defendant (Cruz, 162 Ill. 2d at 349-50). Although Hornbacker possessed drug paraphernalia that theoretically could be used with any number of drugs, including cocaine, we have no difficulty concluding that possession of such generic paraphernalia is at least generally similar to possession of cocaine. Therefore, again, Ash supports the notion that the Hornbacker evidence would have been admissible against defendant if the State had sought to introduce it. Because the standard for admission of other-crimes evidence offered by a defendant "need not be as restrictive as when a prosecutor [offers] such evidence" (Stamper, 766 F. Supp. at 1406), it stands to reason that the Hornbacker evidence was admissible when it was offered by defendant.

Because the trial court erred in ruling that Chambers does not apply to the Hornbacker statements, because the State does not assert that the Hornbacker statements are insufficiently trustworthy to be admitted into evidence under Chambers, and because we hold that the statements were, in fact, admissible as significantly probative to the defense, we remand the cause for further proceedings consistent with this opinion. On remand, the trial court may consider any additional barriers to the admission of Hornbacker's statements (e.g., the Chambers trustworthiness inquiry discussed above) that the State might raise. We express no opinion on the viability of any such challenge. If the court finds that there is still some barrier that excludes Hornbacker's statements, then vacating defendant's conviction will not be necessary. However, if the trial court finds the evidence to be admissible, then the trial court must vacate defendant's conviction.

If defendant's conviction is vacated, a new trial would not violate defendant's right against double jeopardy, because we disagree with his contention that the evidence was insufficient to convict him. See People v. Taylor, 76 Ill. 2d 289, 309 (1979).

Evidence is sufficient to convict if, after viewing it in the light most favorable to the State, a rational trier of fact could have found the elements of the crime beyond a reasonable doubt. People v. Collins, 106 Ill. 2d 237, 261 (1985). To establish the elements of unlawful possession of a controlled substance, the State must prove that the defendant had knowledge of the presence of the controlled substance and that the defendant had immediate and exclusive possession of it. People v. Eghan, 344 Ill. App. 3d 301, 306 (2003). The possession may be actual or constructive. Eghan, 344 Ill. 2d at 306. Actual possession is the exercise of "immediate and exclusive dominion or control." Eghan, 344 Ill. 2d at 307. Constructive possession is "the intent and capability to maintain control and dominion." Eghan, 344 Ill. 2d at 307.

Here, there was evidence that defendant owned the truck and used cocaine. There was also evidence, which defendant disputes, that defendant admitted owning the key ring. Further, defendant and the key ring were both on the passenger side of the truck. While this evidence was not so overwhelming that we may deem harmless the exclusion of Hornbacker's statements, it was sufficient for a rational trier of fact to find defendant guilty beyond a reasonable doubt. Of course, should a new trial occur on remand, our determination of the sufficiency of the evidence would not be binding.

For these reasons, we remand the cause for proceedings consistent with this opinion.

Remanded with directions.

BYRNE and CALLUM, JJ., concur.