2023 IL App (2d) 210697
No. 2-21-0697
Opinion filed September 28, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Boone County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-119 |
| TERRILL HARRIS JR., | ) ) ) | Honorable C. Robert Tobin III, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE MULLEN delivered the judgment of the court, with opinion.
Presiding Justice McLaren concurred in the judgment and opinion.
Justice Jorgensen specially concurred, with opinion.

**OPINION**

¶ 1   Following a jury trial in the circuit court of Boone County, defendant, Terrill Harris Jr.,

was convicted of possession of a controlled substance with intent to deliver (720 ILCS

570/401(a)(2)(B) (West 2020)) and possession of a controlled substance (*id.* § 402(a)(2)(B)) (the

latter conviction was eventually determined to merge into the former). He was sentenced to 15

years' imprisonment. He now appeals, raising four issues. First, he contends that the police lacked

probable cause when they searched his vehicle. Second, he argues that the trial court erred in

allowing a police officer to opine regarding defendant's intent to distribute the controlled substance

found in his vehicle and that this rendered the evidence insufficient to sustain his conviction. Third,

he asserts that the State failed to prove he had the specific intent to distribute cocaine. Fourth, defendant claims that his sentence was excessive and an abuse of discretion. For the reasons that follow, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     Defendant was indicted on two counts: count I alleged possession of a controlled substance (cocaine) with intent to deliver (*id.* § 401(a)(2)(B)) and count II alleged simple possession of a controlled substance (cocaine) (*id.* § 402(a)(2)(B)). Prior to trial, the trial court considered several motions *in limine*. The trial court first considered a pair of such motions brought by both parties concerning whether a police officer, Sergeant Chris Washburn with the Belvidere Police Department, could testify as to defendant's intent to distribute the controlled substance in his possession. The trial court observed that the "average juror is not going to know what roughly 250 grams of cocaine means primarily because most people really don't have much experience *** with cocaine." It then ruled that, subject to a proper foundation, Washburn would be allowed to offer opinion testimony as to the implications of the weight of the cocaine regarding defendant's intent to deliver.

¶ 4     The State also moved, *in limine*, to allow testimony that the reason the police searched defendant's vehicle is that they detected an odor of cannabis emanating from it. Defense counsel stated that he had "[n]o objection with regards as to why they searched the vehicle." He continued, "[M]arijuana is not illegal so that alone would not necessitate a search of a vehicle." The trial court granted this motion, acknowledging that "7 grams of suspect[ed] cannabis on July 3rd of 2020 would not necessarily have been illegal," at least if it were stored properly. The trial court, apparently commenting on the lack of prejudice in allowing this evidence, observed that the legalization of cannabis had not been particularly controversial in Illinois.

¶ 5    At trial, the State first called James Bolin, a trooper with the Illinois State Police. On July 3, 2020, at about 9:30 a.m., he was travelling west on Interstate 90 (I-90) in Boone County. Bolin stated that he observed a black Chevrolet sport utility vehicle (SUV) "following a vehicle in front of it pretty closely." He paced the SUV at 78 miles per hour in a 70 mile-per-hour speed zone. He checked the registration of the SUV and learned that it was registered to defendant. Bolin initiated a traffic stop. He made contact with the vehicle's occupants—"two people and one dog." Bolin testified that he "smelled a strong odor of burnt cannabis coming from the vehicle."

¶ 6    Bolin informed defendant that he would be "searching his vehicle based on the odor of burnt cannabis." At the time, Bolin was with Trooper Greg Melzer, who was acting as Bolin's field training officer. Two other troopers (Weber and Smalec) arrived and assisted in the search. Bolin testified that he observed Smalec hold up a black plastic bag, which contained a substance suspected to be cocaine. Defendant was taken into custody and transported to a maintenance facility, which Bolin referred to as "M-7."

¶ 7    Melzer was the State's next witness. Melzer testified that on July 3, 2020, he was acting as a field training officer for Bolin. They were watching westbound traffic on I-90. They stopped an SUV. He and Bolin approached. Melzer stated that he smelled cannabis coming from the vehicle. He helped search the vehicle. The passenger had an outstanding warrant, and Bolin was addressing that issue. Smalec located a black plastic bag that contained a resealable plastic bag containing a "white rock-like substance." Melzer suspected that the substance was cocaine. The black bag was recovered from a duffel bag containing men's clothing.

¶ 8    After locating the cocaine, the officers placed defendant under arrest. He was then transported to a "processing room" at a maintenance facility known as "M-7." Melzer was not present during the interrogation of defendant.

¶ 9 The State then called Special Agent James Normoyle. He is assigned to the Stateline Area Narcotics Team (SLANT). On July 3, 2020, Bolin and Melzer requested that Normoyle assist in the interrogation of defendant. Normoyle read defendant his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)), and defendant agreed to speak with the police.

¶ 10 Defendant told Normoyle that he was travelling from Chicago to Duluth, Minnesota. Defendant admitted that he had a black and gray duffel bag with him and that he had been in possession of it for the entire trip. Defendant stated that he had stolen the bag containing the cocaine. Defendant related that he had been in Chicago when he observed an individual place the bag behind a dumpster. Defendant took the bag. Defendant stated that the bag contained a white substance that he believed to be either cocaine or methamphetamine. Normoyle testified, "[Defendant] said he was bringing it back to Minnesota and that he had a money problem and thought he could sell it is the way I understood it." Normoyle added, "I don't remember his exact verbiage, but I believe he indicated that he could make money off that item." When asked, defendant stated that he did not know "if he could make $200 off of it." Defendant did not state how much he thought he could make. Defendant added that the female riding with him had nothing to do with the substance the police recovered.

¶ 11 The parties then stipulated that Daniel Bryant, a forensic scientist with the Illinois State Police Crime Laboratory, analyzed the substance recovered from the vehicle defendant was operating. Bryant would testify that the substance was cocaine and that it weighed 248.6 grams.

¶ 12 The State also called Washburn. He is assigned to the Metro Narcotics Unit and serves as its supervisor. He has held this position since 2018. The unit "investigate[s] drug crimes at street-level and mid-level." Washburn related to the trial court his training and experience, and the court recognized Washburn as an expert in the field of narcotics.

¶ 13    Washburn testified that a typical user would ingest about a tenth of a gram of cocaine per "line" or a smaller amount, "a quarter of that," in a "bump." Cocaine costs about $100 per gram. Defendant was in possession of 248.6 grams of cocaine. Washburn opined that this was "not consistent with the amount of cocaine that somebody would have for personal use." He testified that he had spoken to "hundreds of people" and asked them about "drug sales and drug trends in our community." He has asked people what the largest amount of cocaine was that they had ever purchased for themselves. He stated, "[T]he most I've ever been told was 3.5 grams, which is known on the street as an eight-ball because it's one-eighth of an ounce of cocaine." Someone using a gram per day would be an "extremely heavy cocaine user." A quarter of a kilogram of cocaine would sell for about $8000. Thus, in Washburn's opinion, defendant possessed the 248.6 grams of cocaine with the intent to deliver.

¶ 14    On cross-examination, Washburn agreed that other factors exist that are relevant to determining "whether or not cocaine is going to be sold on the street level." For example, the presence or absence of a scale "may be one thing that would be considered." Also, when asked whether he would expect there to be "baggies" present, he replied, "[A]ssuming that they weren't going to sell the whole thing at a marked-up profit ***, then I might look for bags." A ledger might also be present. None of these things were present in defendant's vehicle, nor were there any hidden compartments in the vehicle. The criminal history of the person in possession of the contraband is also relevant.

¶ 15    On redirect-examination, Washburn clarified that whether he would expect to find things like baggies, scales, ledgers, or hidden compartments depended on what point in the chain of distribution the arrest at issue occurred. He explained that his opinion that defendant possessed the cocaine with the intent to deliver did not mean that defendant would necessarily be the individual

selling it on the streets. Rather, defendant may have been delivering it to another person and "ultimately it would end up being distributed on the street."

¶ 16    After Washburn's testimony concluded, the State rested. Defendant made a motion for a directed finding, which was denied. Defendant then elected to not testify and did not call any witnesses. After submitting an exhibit, the defense also rested. The jury found defendant guilty on both charged counts. Defendant filed a motion for a new trial, which was denied.

¶ 17    At the sentencing hearing, defense counsel read a letter from defendant's mother and defendant elected not to make a statement in allocution. The State asserted that the sentencing range for possession of cocaine with intent to deliver was 9 to 40 years' imprisonment and that the mid-point of that range was 24½ years. Defendant possessed 248.6 grams of cocaine, which was near the midpoint of the amount listed in the statute defining possession of cocaine with intent to deliver (100 to 400 grams). Moreover, the State argued, defendant had a history of criminal behavior that put the public at risk, including two offenses of driving while intoxicated, a battery, a domestic battery, and a misdemeanor weapons offense. The State asked for a sentence of 22 years' imprisonment. Defense counsel countered that none of defendant's prior convictions were felonies. Further, defendant had substantial ties to his family, including his two children. Counsel further noted the cost of incarcerating defendant. Counsel requested a minimum sentence.

¶ 18    The trial court first noted the harm 248 grams of cocaine could cause. It noted the relevance of the cost of incarceration as well as the nature of the offense. It observed that the amount of cocaine defendant was convicted of possessing was in the middle of the statutory range. The trial court stated that while defendant had a "history of criminal activity," it had "seen worse." It further found that there was a need to deter others from committing similar offenses. The trial court found in mitigation that defendant's offense did not cause or threaten serious harm (beyond that which

is ordinarily inherent in such drug offenses) and that defendant did not contemplate that it would. The trial court stated that if it "went strictly with just the weight," a sentence of 24½ years would be appropriate. The trial court then concluded that a sentence of 15 years' imprisonment was warranted, emphasizing that this was in the "lower quarter percentile of the range." The trial court also found that count II (simple possession) merged into count I (possession with intent to deliver).

¶ 19    This appeal followed.

¶ 20                                II. ANALYSIS

¶ 21    On appeal, defendant raises four issues. First, he contends that the police searched his vehicle without probable cause. Second, he complains that the trial court erred in allowing Washburn to testify as an expert in the field of narcotics and that, in turn, the evidence is insufficient to sustain his conviction. Third, he argues that the State failed to introduce any evidence that he had the "specific intent to distribute any particular controlled substance or amount." Fourth, he asserts that his sentence is excessive. We will address these issues in the order in which they are presented in defendant's opening brief. For the reasons that follow, we affirm.

¶ 22                              A. Probable Cause

¶ 23    Defendant first argues that the police lacked probable cause to search his vehicle based solely on the fact that they detected an odor of burnt cannabis emanating from it (which is not in dispute). We review a trial court's decision on a suppression motion using a two-part standard of review. *People v. Hill*, 2020 IL 124595, ¶ 14. We apply the manifest-weight-of-the-evidence standard to the trial court's findings of fact, and we review *de novo* its ultimate ruling on whether suppression is appropriate. *Id.*

¶ 24    Before proceeding further, we note that the State asserts that defendant has forfeited this issue.[1] The State correctly notes that defendant neither objected at (or prior to) trial regarding the admission of the fruits of the search of his vehicle nor did he raise this issue in a posttrial motion (in his posttrial motion, defendant did raise the scope of the search but did not contest the proposition that the odor of cannabis provided probable cause). Indeed, to preserve a claim regarding the suppression of evidence, a defendant must raise it in a motion to suppress as well as a posttrial motion. *People v. Johnson*, 334 Ill. App. 3d 666, 672 (2002). Defendant's failure to do so results in the forfeiture of the issue. *People v. Brand*, 2021 IL 125945, ¶ 32. Therefore, we are limited to plain error review. See *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005).

¶ 25    Additionally, we note that defendant did not address the forfeiture of this issue in his opening brief and did not file a reply brief after the State raised the issue. He does not ask that we review the matter for plain error. Accordingly, any argument concerning plain error has also been forfeited. See *People v. Nieves*, 192 Ill. 2d 487, 503 (2000) (finding that the failure to argue "that

---

[1] The State also argues that the doctrine of invited error applies here, but we do not agree. "[U]nder the doctrine of invited error, an accused may not request to proceed in one manner and then later contend on appeal that the course of action was in error." (Internal quotation marks omitted.) *People v. Harvey*, 211 Ill. 2d 368, 385 (2004). Here, regarding admission of this evidence, as the State acknowledges, defense counsel said, "The only issue with regards to marijuana in Illinois or marijuana is not illegal so that alone would not necessitate a search of a vehicle." This cannot fairly be read as a request to admit the evidence or deliberate acquiescence. *Cf. People v. Holloway*, 2019 IL App (2d) 170551, ¶ 45 (invited error applies when defense "deliberately acquiesced in the alleged error as a matter of trial strategy").

the evidence was closely balanced [or that] the error is so severe that it must be remedied to preserve the integrity of the judicial process" forfeited plain error on appeal); see also Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008).

¶ 26    Moreover, assuming that defendant did not forfeit this issue, we find his argument on this point unpersuasive. We begin with the proposition that a warrantless search is generally unreasonable, subject to certain exceptions. *People v. Pitman*, 211 Ill. 2d 502, 513 (2004). Pertinent here, the automobile exception provides that, due to their transient nature, automobiles may be searched so long as "probable cause exists to believe the automobile contains evidence of criminal activity subject to seizure." *People v. Contreras*, 2014 IL App (1st) 131889, ¶ 28. Probable cause to search a vehicle exists where "the facts and circumstances known to the officer at the time would warrant a reasonable person to believe there is a reasonable probability that the automobile contains contraband or evidence of criminal activity." *People v. Stribling*, 2022 IL App (3d) 210098, ¶ 10, *appeal filed*, No. 129014 (Ill. Oct. 20, 2022). Probable cause requires probability rather than certainty. *Hill*, 2020 IL 124595, ¶ 24. Therefore, "probable cause does not require an officer to rule out any innocent explanations for suspicious facts." *Id.* Indeed, it is not necessary that the belief that contraband or evidence is present be "more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983).

¶ 27    Prior to the legalization of cannabis in this state, our supreme court held that the odor of cannabis emanating from a vehicle, in itself, provided probable cause to search that vehicle. *People v. Stout*, 106 Ill. 2d 77, 88 (1985). This was true regarding the odor of either burnt or raw cannabis. *Id.* at 87 (burnt); *People v. Smith*, 2012 IL App (2d) 120307, ¶ 14 (raw). Since *Stout*, the laws regarding cannabis have undergone a number of changes.

¶ 28    First, in 2014, the Compassionate Use of Medical Cannabis Pilot Program Act (410 ILCS 130/1 *et seq.* (West 2014)) was enacted, "which allowed those with certain debilitating medical conditions to purchase and possess cannabis." *Stribling*, 2022 IL App (3d) 210098, ¶ 17. Shortly thereafter, possession of small amounts of cannabis was decriminalized. *Id.* In *Hill*, 2020 IL 124595, ¶ 35, the supreme court held that these changes did not render the odor of cannabis irrelevant in determining whether probable cause existed and found that it, along with certain other facts, was sufficient to justify a search of a vehicle. The *Hill* court expressly declined to reconsider *Stout*. *Id.* ¶ 18 ("Because the record shows more than the odor of raw cannabis was considered, we need not address the validity of *Stout* after the enactment of the Compassionate Use of Medical Cannabis Pilot Program Act *** (410 ILCS 130/1 *et seq.* (West 2016)) and decriminalization of possession of small amounts of cannabis. Instead, we address whether the totality of the circumstances here supported a finding of probable cause.").

¶ 29    The next change in the law regulating cannabis occurred on January 1, 2020. Effective that date, the Cannabis Regulation and Tax Act made lawful the possession by Illinois residents 21 years of age and older of "up to and including 30 grams of cannabis, up to 500 milligrams of tetrahydrocannabinol (THC) in a cannabis-infused product, and 5 grams of cannabis concentrate." *Stribling*, 2022 IL App (3d) 210098, ¶ 23. Since then, courts have considered the effect of these changes in the law regarding whether the odor of cannabis remained a sufficient justification to search a vehicle but have not agreed on the result. Compare *id.* ¶ 29 (holding that the smell of burnt cannabis without more does not establish probable cause for vehicle search), and *People v. Redmond*, 2022 IL App (3d) 210524, *appeal allowed*, No. 129201 (Ill. Mar. 29, 2023) (following *Stribling*), with *People v. Molina*, 2022 IL App (4th) 220152, *appeal allowed*, No. 129237 (Ill. Mar. 29, 2023) (holding smell of raw cannabis sufficient to justify search of vehicle), and *People*

*v. Hall*, 2023 IL App (4th) 220209, ¶ 27, *appeal filed*, No. 129439 (Ill Mar. 1, 2023) (holding odor of raw cannabis and passenger's pre-search admission that he possessed cannabis justified search of car, finding *Stout* "remains good law" and citing *Molina* with approval), and *People v. Mallery*, 2023 IL App (4th) 220528, ¶ 42 ("when the odor of cannabis is detectable in a vehicle, it is 'almost certain' that there has been a violation of the Vehicle Code," relying on *Molina*); see generally Michael Podgurski, *Cannabis, Cars, and Probable Cause*, 111 Ill. B.J. 30 (Feb. 2023).

¶ 30    In holding that "the smell of the burnt cannabis, without any corroborating factors, is not enough to establish probable cause to search [a] vehicle," the Third District, in *Stribling*, 2022 IL App (3d) 210098, ¶ 29, found *Stout* inapplicable to postlegalization fact patterns and explained:

> "The smell of burnt cannabis, alone, coupled with the defendant's statement that someone (he did not state that it was himself) had smoked in the vehicle 'a long time ago,' was not enough for 'a reasonable officer [to] conclude—considering all of the surrounding circumstances, including the plausibility of the [innocent] explanation itself—that there was a "substantial chance of criminal activity." ' [Citation.] It was legal for the defendant to possess some cannabis. It was also legal for the defendant to have smoked cannabis and then drive, so long as the concentration in his blood or urine did not pass the threshold amount. The evidence presented does not show that the officer had any concerns with the defendant's blood concentration or any impaired driving." *Id.* ¶ 28 (citing *District of Columbia v. Wesby*, 583 U.S. ___, ___, 138 S. Ct. 577, 588 (2018)).

Conversely, the Fourth District recently held that *Stout* remains good law and found the odor of raw cannabis sufficient to establish probable cause. *Molina*, 2022 IL App (4th) 220152, ¶ 52.

¶ 31    Probable cause is assessed with reference to the totality of the circumstances. *People v. Lee*, 214 Ill. 2d 476, 485 (2005); *People v. Love*, 199 Ill. 2d 269, 279 (2002). It "requires only a

probability or substantial chance of criminal activity, not an actual showing of such activity." (Internal quotation marks omitted.) *Wesby*, 583 U.S. at ___, 138 S. Ct. at 586. While it is true that the possession and use of cannabis is now legal in many circumstances, it is still a crime in some situations. See 625 ILCS 5/11-502.1 (West 2020) (concerning medical cannabis); *id.* § 11-502.15 (concerning adult-use cannabis). For example, no driver may use cannabis in a motor vehicle upon a highway in this State. *Id.* §§ 11-502.1(a), 11-502.15(a). And, no person may possess cannabis in a motor vehicle upon a highway in this State unless it is secured in an inaccessible, "odor-proof" container. *Id.* §§ 11-502.1(c), 11-502.15(c). Both infractions are Class A misdemeanors. *Id.* §§ 11-502.1(d), 11-502.15(d). As the *Molina* court put it: "[r]egardless of recent changes in the law legalizing possession of small amounts of cannabis, there are still, among other things, (1) illegal ways to transport it, (2) illegal places to consume it, and (3) illegal amounts of it to possess." *Molina*, 2022 IL App (4th) 220152, ¶ 43. Therefore, a law enforcement officer who detects "a strong odor of burnt cannabis coming from the vehicle," as Bolin testified here, has probable cause to believe that cannabis is being transported, possessed, or used in a manner contrary to law. See *Hill*, 2020 IL 124595, ¶ 35. After all, "probable cause does not require an officer to rule out any innocent explanations for suspicious facts." *Id.* ¶ 24.

¶ 32    Like the court in *Molina*, we acknowledge that "cannabis is in a different position in society than it was" (*Molina*, 2022 IL App (4th) 220152, ¶ 52), but given that the laws of this state deem its possession and use in a car a crime in some situations, then it follows that the smell of cannabis in a car still forms the basis for probable cause. Accordingly, since the search of the car was justified based on the odor of burnt cannabis, there was no error in the admission of the contraband seized from the car.

¶ 33                                B. Expert Testimony

¶ 34     Defendant next complains that the conviction must be overturned because it derives from "improperly admitted 'expert' testimony based on unreliable anecdotal hearsay," pointing to the opinion testimony of Washburn—whom the trial court qualified as an expert in the field of narcotics—that defendant possessed the 248.6 grams of a substance containing cocaine with the intent to deliver. Generally, a witness may testify as an expert if he or she possesses "experience and qualifications [that] afford him [or her] knowledge that is not common to laypersons." *Thompson v. Gordon*, 221 Ill. 2d 414, 428 (2006). In addition, the proposed testimony must "aid the trier of fact in reaching its conclusions." *Id.* There is no "predetermined formula" specifying how an expert acquires the knowledge that renders him or her an expert. (Internal quotation marks omitted.) *Id.* Such knowledge may be acquired through study, practical experience, training, education, or research. *Id.* at 428-29. Any weakness in the basis of an expert's opinion goes to the weight of the testimony; it should not affect its admissibility if the facts, data, or opinions are reasonably relied upon by experts in the relevant field. *People v. Comier*, 2020 IL App (1st) 170500, ¶ 83. The decision to admit expert testimony is a matter within the sound discretion of the trial court and will not be reversed absent an abuse of that discretion. *Snelson v. Kamm*, 204 Ill. 2d 1, 24 (2003). An abuse of discretion occurs only if no reasonable person could agree with the trial court. *Prairie v. Snow Valley Health Resources, Inc.*, 324 Ill. App. 3d 568, 571 (2001). Here we find no abuse of discretion. Washburn testified to his extensive experience in the field of narcotics and his opinion that the amount of the contraband was inconsistent with personal use, and that testimony was admissible. The weight to be assigned the testimony is for the jury to determine. *Snelson*, 204 Ill. 2d at 27. In any event, defendant admitted to the police that he was having money problems and he thought he could sell the substance, so any purported error was harmless. See

*People v. Bond*, 405 Ill. App. 3d 499, 512 (2010) (holding that the defendant's admission that he possessed drugs with the intent to deliver them constituted overwhelming evidence of guilt).

¶ 35                                    C. Intent

¶ 36    Defendant next argues that the State never proved he had the specific intent to possess *cocaine* rather than some other drug. Defendant points out that, in the statement he made to the police, he stated he believed that the white substance in his duffel bag was either cocaine or methamphetamine. Moreover, since he took the drugs from behind a dumpster, he had made no deal to purchase a certain drug. Defendant reasons, "If this story is credited, then he did not knowingly possess *cocaine* as charged." (Emphasis added.) Defendant acknowledges that the drugs were, in fact, cocaine, as testing revealed, and that "[t]he description of the drugs sounds like cocaine." He states, "It could be that [his] story was a lie and he was simply engaged in ordinary purchase and distribution of drugs." Defendant contends that choosing between these two possibilities requires "rank speculation." We disagree. In fact, if the jury disregarded defendant's statement professing ignorance about the type of drug he possessed, the balance of the evidence is sufficient to support the conviction.

¶ 37    When a defendant challenges the sufficiency of the evidence, "the relevant question on review is whether, after considering the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *People v. Branch*, 2014 IL App (1st) 120932, ¶ 9. "The trier of fact determines the credibility of witnesses, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence." *Id.* We will disturb a conviction only if the evidence is so unsatisfactory as to raise a reasonable doubt regarding a defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011).

¶ 38 The State counters that the statute provides simply that possession of a "controlled substance" with intent to deliver is unlawful. 720 ILCS 570/401 (West 2020). We note, however, that methamphetamine is excluded: "it is unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled substance other than methamphetamine." *Id.* Moreover, as defendant points out, both the indictment and the jury instructions in this case specifically reference "cocaine" rather than simply a controlled substance. Thus, the jury did not return a verdict based on defendant possessing a controlled substance; it specifically convicted defendant of possessing cocaine with intent to deliver. And, the record contains ample evidence to support that inference.

¶ 39 Initially, we note that the trier of fact is free to believe or reject all or part of a witness's statement. *People v. Dinwiddie*, 299 Ill. App. 3d 636, 644 (1998). State of mind is typically proved using circumstantial evidence. *People v. Witherspoon*, 379 Ill. App. 3d 298, 307 (2008). It is not required that "each link in the chain of circumstances be proved beyond a reasonable doubt." *People v. Gomez*, 215 Ill. App. 3d 208, 216 (1991). Instead, "it is sufficient if all the circumstantial evidence taken together satisfies the jury beyond a reasonable doubt of the defendant's guilt." *Id.* Here, the jury could infer from the fact that defendant had in his possession a substantial quantity of cocaine that he knew what it was. Construing the evidence in the light most favorable to the State, as we must (*Branch*, 2014 IL App (1st) 120932, ¶ 9), we conclude that defendant's conviction is adequately supported by the record.

¶ 40 Before closing this section of the opinion, we note that defendant briefly raises an as-applied challenge to the constitutionality of the statute under which he was convicted. Defendant begins by pointing out that criminal statutes generally are presumed to contain a scienter requirement. *Rehaif v. United States*, 588 U.S. ___, ___, 139 S. Ct. 2191, 2195 (2019). That is, a

defendant must typically possess a culpable mental state regarding each of the statutory elements that describe the conduct criminalized by the statute. *Id.* at ___, 139 S. Ct. at 2195. At issue here, section 401 of the Illinois Controlled Substances Act states, "[I]t is unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled substance." 720 ILCS 570/401 (West 2020). Defendant notes that the statute then goes on to set forth penalties based on the substance and the amount possessed. Defendant reasons that the type and quantity of the substance possessed, and his knowledge of those facts, are elements that must be proven.

¶ 41    We note that they were. The trial court expressly instructed that, to convict defendant, the jury had to find he knowingly possessed cocaine. The instruction also specified the amount of the substance at issue. Absent "a clear legislative purpose to impose absolute liability ***, [a] court will imply a mental state requirement." *People v. Anderson*, 148 Ill. 2d 15, 24 (1992). This is consistent with the well-established principle that we must interpret statutes, if possible, to preserve their constitutionality. *Id.* at 22.

¶ 42    Defendant asserts that "any construction that would allow his conviction without proof of his specific intent would" be unconstitutional. However, since the indictment alleged that defendant knowingly possessed with intent to deliver more than 100 grams but less than 400 grams of a substance containing cocaine and the jury was instructed that it had to find accordingly in order to convict, the statute was not applied to defendant in an unconstitutional manner.

¶ 43    In short, we find defendant's arguments concerning state of mind unpersuasive.

¶ 44                              D. Sentencing

¶ 45    Finally, defendant argues that the trial court abused its discretion in imposing his sentence. A sentence is an abuse of discretion only if it is "greatly at variance with the spirit and purpose of

the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000). Absent an abuse of discretion, a court of review will not disturb a defendant's sentence. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). A trial court's decision regarding an appropriate sentence is entitled to great discretion. *Id.* A reviewing court may not simply reweigh the evidence and substitute its judgment for that of the trial court on these matters. *Stacey*, 193 Ill. 2d at 209.

¶ 46 Section 5-4-1 of the Unified Code of Corrections (730 ILCS 5/5-4-1(a)(3), (4) (West 2020)) mandates that a trial court consider "the financial impact of incarceration" and "evidence and information offered by the parties in aggravation and mitigation." Sections 5-5-3.1 and 5-5-3.2 set forth numerous factors in mitigation and aggravation that a court must consider in fashioning a sentence. *Id.* §§5-5-3.1, 5-5-3.2. A trial court need not recite each such factor and expressly assign it weight. *People v. Baker*, 241 Ill. App. 3d 495, 499 (1993). It is presumed "that a trial court considered all relevant factors in determining a sentence, and that presumption will not be overcome without explicit evidence from the record that the trial court did not consider mitigating factors." *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). A trial court is presumed to have considered all mitigating evidence before it, and to overcome that presumption, a defendant must point to something beyond the length of the sentence itself. *People v. Bilski*, 333 Ill. App. 3d 808, 820 (2002).

¶ 47 Here, the trial court began its discussion of sentencing by stating that it must consider numerous factors in aggravation and mitigation and that "the cost of incarceration is one." It further stated that it had to consider the nature of the offense, which in a case like this, "we're really talking about weight." Defendant was convicted of possessing with intent to deliver 248.6 grams of cocaine, which, the trial court noted, is "almost smack in the middle of the" statutory range. The

trial court then observed that defendant had a criminal history, though it had seen both better and worse, which was an aggravating factor. See 730 ILCS 5/5-5-3.2(a)(3) (West 2020). The trial court later recognized defendant's youth at the time he had committed the earlier offenses that comprised some of his criminal record, but it noted the recency of other offenses and characterized defendant's more recent conduct as an "uptick of criminal activity." It further found that there was a need to deter others from committing similar offenses. See *id.* § 5-5-3.2(a)(7).

¶ 48    In mitigation, the trial court first found that, to the extent "[t]here weren't gunshots fired, there weren't [*sic*] any physical violence," defendant's conduct neither caused nor threatened physical harm nor did defendant contemplate that it would. *Id.* § 5-5-3.1(a)(1), (2). The trial court then stated that many factors did not apply, expressly pointing to whether defendant was likely to reoffend and his prospects on probation. *Id.* § 5-5-3.1(a)(8), (9), (10). The trial court also ruled out defendant having a strong provocation to commit the offense and the existence of substantial grounds tending to excuse his conduct. *Id.* § 5-5-3.1(a)(3), (4). It did note the effect defendant's incarceration would have on his children. See *id.* § 5-5-3.1(a)(18).

¶ 49    The trial court observed that the sentencing range for possession of cocaine with intent to deliver was 9 to 40 years' imprisonment. It noted that, if it "went strictly with just the weight," the middle of that range would be 24½ years' imprisonment. The trial court then imposed a sentence of 15 years' imprisonment, which, it explained, was "still in the lower quarter percentile of the range," "to be served at 75 percent under truth in sentencing." It also found that the second count, alleging simple possession, merged into the first count, alleging possession with intent to deliver.

¶ 50    Defendant now asserts that the trial court made a number of errors in sentencing him. First, defendant contends that the trial court did not adequately consider the cost of incarcerating him. Second, defendant argues that the trial court improperly relied on a "mechanical formula" in

crafting a sentence, specifically that the trial court used the weight of the cocaine as a "starting point" that initially placed the sentence in the middle of the statutory range. Third, defendant complains that his sentence was higher than he would have received in Cook County. Fourth, he contends that the trial court erred in citing the need to deter others as an aggravating factor. Finally, he complains that the trial court's explanation of the sentence was confusing.

¶ 51    Turning to defendant's first two arguments, we find that both ask us to reweigh the evidence and substitute our judgment for that of the trial court. The trial court clearly did consider the cost of incarceration and defendant's complaint is not that the court did not consider this factor; rather, it is that the trial court did not accord it adequate weight. It is not our role to reweigh such evidence and substitute our judgment for that of the trial court. *Stacey*, 193 Ill. 2d at 209. Defendant's second argument is that the trial court, in imposing the 15-year sentence, relied on a "mechanical formula" in arriving at a sentence in that it considered that defendant possessed an amount of drugs near the middle of the statutory range and noted that 24½ years is the middle of that range. But, defendant's sentence of 15 years is not "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense" (*id.* at 210), and so was not an abuse of discretion.

¶ 52    Defendant also raises what he refers to as the "endpoint problem." By this, defendant means that, if a defendant was convicted of possessing the minimum or maximum amount of drugs within the given statutory range, it would be impossible to give effect to mitigating or aggravating factors, respectively. Defendant asserts that proceeding in this manner would be "illogical." See *People v. Calderon*, 101 Ill. App. 3d 469, 479 (1981) ("It would be illogical in each case to start at the minimum sentence and mechanically add or subtract years depending on each aggravating or mitigating factor. If this were the proper procedure, a defendant convicted of armed robbery but

having several mitigating factors and no aggravating factors could hypothetically be sentenced to a term below the minimum."). We do not see an "endpoint problem" in this case. The trial court considered the statutory factors, including the amount of the drug and factors both aggravating and mitigating, and crafted a sentence within its discretion. See *id.* ("there is no specific formula provided in the Unified Code of Corrections").

¶ 53    Third, in a section titled "Geographical Uniformity," defendant complains that he would have received a lighter sentence had he been tried in Cook County. Defendant asks that we take judicial notice of the purported "well-known fact, easily gleaned from the case law of the First District, that a sentence such as this would never have been given under remotely similar circumstances had the Defendant been tried in Cook County." Generally, "[a] reviewing court may take judicial notice of factual evidence when the facts are capable of immediate and accurate demonstration by resort to easily accessible sources of indisputable accuracy." *People v. Spencer*, 408 Ill. App. 3d 1, 10 (2011). While the case law of the First District may qualify as an "easily accessible source[ ] of indisputable accuracy," the factual proposition advocated by defendant—that sentences are lighter in Cook County—is certainly not "capable of immediate and accurate demonstration." Not all cases are appealed, and not all appeals address sentencing. Defendant makes no attempt to explain how the case law of the First District would constitute an adequate sample of sentencing in Cook County generally. And, even if it did, we would still have to consider how the facts of individual cases affected the ultimate sentence. This is simply not the sort of proposition of which a court could take judicial notice.

¶ 54    Defendant next complains that the trial court cited deterrence as an aggravating factor. See 730 ILCS 5/5-5-3.2(a)(7) (West 2020). Defendant argues that this is an impermissible double enhancement (see, *e.g.*, *People v. Phelps*, 211 Ill. 2d 1, 11-12 (2004)), as the trial court stated that

"this statute was built with some pretty significant penalties primarily to attempt to deter drug dealers from dealing drugs." Defendant does not support this argument with any legal authority, thus forfeiting the issue. *People v. Ward*, 215 Ill. 2d 317, 331-32 (2005). Moreover, the relevant authority we have located does not support defendant's position:

> "[T]he general rule against double enhancement is merely a rule of construction established by this court, which arises from the presumption that the legislature considered the factors inherent in the offense in setting the initial penalty for that offense. [Citation.] But where the legislature has made clear an intention to enhance the penalty for a crime, even in a way which might constitute double-enhancement, this court will not overrule the legislature. [Citation.]" *People v. Sharpe*, 216 Ill. 2d 481, 530 (2005).

Here, the legislature set forth the penalties for the offense of which defendant was convicted and also directed sentencing courts to consider the need for deterrence in 5-5-3.2 of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(a)(7) (West 2020)). Thus, if a double enhancement has occurred here, it was contemplated and sanctioned by the legislature.

¶ 55    Finally, defendant asserts that the trial court's explanation of his sentence was confusing, though he admits that "[i]t is not clear that Defendant was directly harmed by receiving a more severe sentence as a result." Specifically, defendant complains that, while the trial court stated that it initially found that defendant's criminal history was an aggravating factor, while acknowledging that it had seen both better and worse, it later appeared to regard it as a mitigator, stating, "[W]hile [defendant] does have a criminal history, it's not as significant as I've seen as well as the other mitigation that I've talked about so I am going to sentence him to 15 years." Since the trial court ultimately treated defendant's criminal history as a mitigating factor, defendant was clearly not prejudiced by this language. We will not disturb defendant's sentence based on an alleged error

that did not prejudice him. See *People v. Muskgrove*, 44 Ill. App. 3d 381, 391 (1976); *People v. Flynn*, 23 Ill. App. 3d 730, 735-36 (1974).

¶ 56    In sum, we find no error in the trial court's imposition of a sentence of 15 years' imprisonment on defendant.

¶ 57                                                    III. CONCLUSION

¶ 58    In light of the foregoing, we affirm the judgment of the circuit court of Boone County.

¶ 59    Affirmed.

¶ 60    JUSTICE JORGENSEN, specially concurring:

¶ 61    I agree with the majority's analysis regarding forfeiture of the probable-cause issue, including its conclusion that plain-error review is not available. I write separately, however, because I believe the majority's analysis, addressing the question left open in *People v. Hill*, 2020 IL 124595, and ignoring forfeiture, is judicial *dicta*. See *People v. Williams*, 204 Ill. 2d 191, 206-07 (2003). I believe that the majority's discussion of the merits of the probable-cause issue is not necessary for the outcome of this appeal. I would simply affirm the trial court because any challenge to the finding of probable cause to search defendant's vehicle was forfeited since it was not addressed by the trial court. *People v. Brand*, 2021 IL 125945, ¶ 32. Moreover, plain-error review is not available here because defendant did not ask for it. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010) ("A defendant who fails to argue for plain-error review obviously cannot meet his burden of persuasion.").

*People v. Harris*, **2023 IL App (2d) 210697**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Boone County, No. 20-CF-119; the Hon. C. Robert Tobin III, Judge, presiding. |
| **Attorneys for Appellant:** | Anthony R. Burch, of Burch & Associates, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Tricia L. Smith, State's Attorney, of Belvidere (Patrick Delfino, Edward R. Psenicka, and Adam J. Rodriguez, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |